UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Eastern District of Kentucky
**F I L E D**

NOV 1 3 2014

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.

INDICTMENT NO. 0-14 cr 20 - DLB

JOHN MADDUX, JR.,
CHRISTINA CARMAN,
BARBARA JEAN ROUTH,
      aka BONNIE ROUTH,
JULIE COSCIA,
ANTHONY COSCIA,
DAVID H. WHITE,
MICHAEL E. SMITH,
MIKHAIL SEROV,
ALEXANDER SERGEEV,
YURIY PAK,
JONATHAN MORGAN, and
JACK WEIZMAN

\*   \*   \*   \*   \*

THE GRAND JURY CHARGES:

### Introduction

#### Applicable Laws and Relevant Entities

At all times relevant:

1.      Many localities, most states and the federal government levy excise taxes on cigarettes. In many of these jurisdictions, the state and local taxes on cigarettes constitute a significant amount of the retail cost of cigarettes. For example, state and local excise taxes on retail cigarettes in the City of New York are $5.85 a pack. In the City of Chicago, state and local excise taxes on cigarettes are $6.16 a pack. The federal tax on a

1

pack of cigarettes is approximately $1.01 a pack. Federally, the taxes on cigarettes manufactured outside the United States are paid upon the importation of cigarettes into the United States. Federal law also requires that only cigarettes which are properly labeled as cigarettes are allowed to be imported into the United States. Cigarettes must be declared with U.S. Customs and Border Protection and are subject to the payment of federal excise taxes by the first importer.

2.    Generally, when cigarettes are sold by in-state "brick and mortar" retailers, state and local excise taxes are paid, by state licensed tobacco stamping agents or licensed wholesalers, to the states into which cigarettes are sold. Many of these stamping agents are also tobacco wholesalers licensed by the states. These licensed stamping agents/wholesalers pay the applicable state taxes and, in forty-seven of the fifty states, affix a state tax stamp to the cigarette package representing the payment of those taxes. In the other three states, the wholesalers pay the taxes. The cost of the state and local excise tax is passed on from the stamping agent/wholesaler to the retailer who purchases tax paid cigarettes. The retailer then passes the cost on to the customer through the price of the cigarettes as determined by the retail establishment.

3.    Cigarettes are also distributed in interstate commerce by remote, ("non-brick and mortar") delivery sellers. Federal law governs these distributions in interstate commerce and sets forth mechanisms whereby proper state and local excise taxes are able to be paid and collected by the states and localities. From on or before 2008 through on or about June 2010, the Jenkins Act governed the reporting of sales of cigarettes. 15 U.S.C. § 376. This law required the following:

2

4.      Any person who sells or transfers for profit cigarettes in interstate commerce,

whereby such cigarettes are shipped into a state taxing the sale or use of cigarettes, to

other than a distributor licensed by or located in such state, or who advertises or offers

cigarettes for such a sale or transfer and shipment, shall--

(1) first file with the tobacco tax administrator of the state into which such shipment is

made or in which such advertisement or offer is disseminated a statement setting forth his

name and trade name (if any), and the address of his principal place of business and of

any other place of business; and

(2) not later than the 10th day of each calendar month, file with the tobacco tax

administrator of the state into which such shipment is made, a memorandum or a copy of

the invoice covering each and every shipment of cigarettes made during the previous

calendar month into such state; the memorandum or invoice in each case to include the

name and address of the person to whom the shipment was made, the brand, and the

quantity thereof. 15 U.S.C. § 376.

5.      Effective June 29, 2010, the Federal Prevent All Cigarette Trafficking Act (PACT

Act) amended provisions of the Jenkins Act. 15 U.S.C. §§ 375 - 378. The PACT Act

expanded the existing reporting requirements and added requirements regarding the

shipment and packaging of tobacco; registration with federal and state tobacco

authorities; compliance with state tax and licensing requirements relating to tobacco; and

the filing of certain reports to state tax administrators. The Act also generally prohibited

mailing such cigarettes through the United States Postal Service to consumers.

6.      The registration and reporting requirements of the Jenkins Act and PACT Act

3

enable the states to collect excise taxes that are due on cigarettes mailed or shipped into the various states.

7.      Mainstream Merchant Services and Worldpay US, Inc. are merchant credit card processing companies.

8.      Automated Clearing House (ACH) is an electronic network for financial transactions in the United States. ACH payments include electronic payments that are created when a customer gives a business authorization to debit directly from the customer's checking or savings account for the purpose of bill payment.

9.      EFT Network, Inc. is a company located in Hawthorne, New York. EFT Network Inc. provides systems to businesses to process ACH and other payment options.

10.     Checkredi of Kentucky, LLC (Checkredi, LLC) is a business providing other businesses options in electronic payment processing services, including credit cards and checks, and is located in Lexington, Kentucky. Checkredi, LLC offers the services of EFT Network, Inc. to businesses as a payment processing solution.

<u>The Defendants and Their Businesses</u>:

11.     From on or about January 2003 through June 2010, **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. operated a Kentucky-based cigarette order, fulfillment and shipping center named Your Kentucky Tobacco Resource, Inc. (YKTR, Inc.), d/b/a Kentucky Smokes, located at 314 Ferry Street, Russell, Kentucky. The financial operations of the business were conducted, in part, from Pinetop, Arizona. According to Articles of Incorporation filed with the Kentucky Secretary of State's Office, YKTR, Inc. was incorporated on January 2, 2003, and individuals identified by

4

the initials C.M. and J.T. were the listed officers of the corporation. According to YKTR,

Inc., corporate tax returns filed for the years 2008, 2009, 2010, and 2011, **CHRISTINA**

**CARMAN** was a fifty percent shareholder in the business, while G.H. and J.T. were each

twenty-five percent shareholders in the business.

12.      From on or about July 2005 through December 2013, **JOHN MADDUX, JR.,**

**CHRISTINA CARMAN**, and G.H. also operated a Kentucky-based cigarette call center

named ESR II, Inc. (European Supply Resource) d/b/a AR Trade, located at 314 Ferry

Street, Russell, Kentucky. Cigarettes were supplied and distributed by international

sources. The financial operations of the business were conducted, in part, from Pinetop,

Arizona. According to Articles of Incorporation filed with the Kentucky Secretary of

State's Office, ESR II, Inc. d/b/a AR Trade was incorporated on July 22, 2005, and

**CHRISTINA CARMAN** was listed as an officer of the corporation. According to ESR

II, Inc. d/b/a AR Trade, corporate tax returns filed for the years 2009, 2010, 2011, and

2012, **CHRISTINA CARMAN** was a fifty percent shareholder in the business, while

G.H. and J.T. were each twenty-five percent shareholders in the business.

13.      **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. were also associated

with other businesses, including: 1) ASR I, Inc., incorporated in Kentucky, with a

primary address in Russell, Kentucky, 2) ESR I LLC, organized in Arizona, with a

primary address in Pinetop, Arizona, 3) ESR-III, LLC, organized in Arizona, with

addresses in both Pinetop, Arizona and Russell, Kentucky, and 4) DSL Ever-Ready

Specialty Glass, LLC, organized in Arizona, with a primary address in Phoenix, Arizona.

14.      **BARBARA JEAN ROUTH, aka BONNIE ROUTH**, was employed as a sales

5

representative for Mainstream Merchant Services and Worldpay US, Inc.

15.    From on or about December 2008 through December 2013, **JULIE COSCIA** and **ANTHONY COSCIA** operated an Arizona-based cigarette call center named ASC Properties d/b/a Cigarette Girl.

16.    From on or about January 2003 through June 2010, **DAVID H. WHITE** operated a Kentucky-based cigarette call center named AA Discount Cigarettes and also operated an internet website known as discountcigarettesdomestic.com.

17.    From on or about August 2005 through September 2013, **MICHAEL E. SMITH** operated a Kentucky and California-based cigarette call center named Cigsbymail and two internet websites known as paylesssmokes.com and cigsbymail.com, d/b/a Payless Enterprises, Inc.

18.    From on or about May 2005 through November 2014, **MIKHAIL SEROV** and **ALEXANDER SERGEEV** operated a cigarette fulfillment company named Prime Trade Limited which satisfied orders for cigarettes from Ukraine, Moldova, and Israel.

19.    From on or about August 2007 through September 2013, **YURIY PAK** operated a cigarette fulfillment company known as Galastore.com, owned and operated by Cendano Corporation in Kyrgyzstan, which satisfied orders for cigarettes from Kyrgyzstan.

20.    From on or about December 2012 through November 2013, **JONATHAN MORGAN** was a representative of Dutyfreedepot.com, a cigarette order fulfillment company, owned and operated by Classica International Express 2007 Ltd. in Israel, which satisfied orders for cigarettes from Israel.

21.    From on or about December 2012 through November 2014, **JACK**

**WEIZMAN** was the chief executive officer of Dutyfreedepot.com.

## DOMESTIC OPERATIONS

### COUNT 1
### 18 U.S.C. § 1349

1.     From on or before 2008, and continuing through approximately June 2010, in Greenup County, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,**
**CHRISTINA CARMAN,**
**BARBARA JEAN ROUTH,**
**aka BONNIE ROUTH,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire with each other, and others known and unknown, to commit the following offenses against the United States:

a) to knowingly commit Mail Fraud in violation of 18 U.S.C. §1341, that is, they devised a scheme and artifice to defraud state and local taxing authorities of cigarette excise taxes and to obtain money by means of false or fraudulent pretenses, representations, and promises, by engaging in the sale and distribution of untaxed cigarettes to United States consumers without complying with reporting requirements, and in so doing did cause to be delivered by the United States Postal Service and any private or commercial interstate carrier, according to the directions thereon, mail matter for the purpose of executing said scheme and artifice.

b) to knowingly commit Wire Fraud in violation of 18 U.S.C. §1343, that is, they devised a scheme and artifice to defraud state and local taxing authorities of cigarette excise taxes, and to obtain money by means of false and fraudulent pretenses,

7

representations and promises, by engaging in the sale and distribution of untaxed cigarettes to United States consumers, and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing said scheme and artifice.

2.    Paragraphs 1 through 17 of the Introduction to this Indictment are realleged and incorporated by reference herein.

### PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for the co-conspirators to enrich themselves by obtaining and selling untaxed cigarettes at significantly reduced prices in direct competition with lawfully operated businesses which followed the laws of their respective states and paid the required taxes on cigarettes they held for sale.

### MANNER AND MEANS OF THE CONSPIRACY

4.    During the time period alleged, **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H., (d/b/a YKTR, Inc.), acquired untaxed cigarettes from various suppliers in the United States and resold and shipped those cigarettes to individual customers throughout the United States.

5.    **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H., failed to report the sale of these cigarettes as required by law. This failure resulted in the inability of the respective states to collect excise taxes from their citizens. **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H, relied on this failure to keep prices low for the success of YKTR, Inc.

6.    **CHRISTINA CARMAN** was a listed owner on multiple business bank accounts

8

utilized by YKTR, Inc. to deposit the revenues of the business. **JOHN MADDUX, JR.** was a signatory on the accounts. Funds were transferred from these accounts to use in operation of YKTR, Inc. and to purchase both personal and business assets.

7.    In addition to selling untaxed cigarettes to their own customers, **JOHN MADDUX, JR., CHRISTINA CARMAN,** and G.H., (d/b/a YKTR, Inc.), fulfilled orders on behalf of other business operations seeking the same competitive advantage.

8.    Customers who purchased cigarettes from YKTR, Inc. called in or mailed in their orders to YKTR, Inc. YKTR, Inc. accepted payment for the orders by check, money order, and credit card.

9.    **JOHN MADDUX, JR., CHRISTINA CARMAN,** and G.H, or employees acting on their behalf, accepted orders for cigarettes from their customers located throughout the United States and fulfilled these orders by mailing untaxed cigarettes from YKTR, Inc. in Russell, Kentucky, using the United States Postal Service and Federal Express. For example, on or about April 21, 2010, at least one of the co-conspirators caused untaxed cigarettes to be mailed from Russell, Kentucky to a customer identified by the initials R.R. located in Black Hawk, South Dakota.

10.    **BARBARA JEAN ROUTH,** aka **BONNIE ROUTH,** also assisted **JOHN MADDUX, JR.** in setting up a merchant account with false information through Worldpay US, Inc., identified by Customer Number ending *5814, in the business name of DSL Ever-Ready Specialty Glass, LLC, a fictitious supplier of paint, glass and wallpaper. The account was also used to process credit card payments for untaxed cigarettes purchased from YKTR, Inc., and to disguise the identity of the product

9

purchased.

11.     To facilitate these credit card payments through a merchant account, Worldpay

US, Inc., identified by Customer Number ending *5814, YKTR, Inc. used a credit card

terminal located at the premises of 314 Ferry Street, Russell, Kentucky.  Customers

paying by credit card supplied their account number to an employee at the business; the

employee entered the number into the terminal and caused a wire transmission in

interstate commerce to occur from Russell, Kentucky to the customers' credit card

processors out of state.  For example, on or about April 7, 2010, a customer identified by

the initials N.K. provided payment in the form of a MasterCard account number ending in

*7041.  The payment request was transmitted in interstate commerce from Russell,

Kentucky to MasterCard's processing center in New York, from credit card terminal

LK718863.

12.     During the time period charged, YKTR, Inc. generated approximately $34,900,000

in sales of untaxed cigarettes to its own customers and caused state and local

governments to be defrauded of approximately $22,800,000 in excise tax revenues.

    All in violation of 18 U.S.C. §1349.

## COUNT 2
### 18 U.S.C. § 1956(h)

1.     From on or before March 2009, and continuing through approximately August

2010, in Greenup and Boyd Counties, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR,**
**CHRISTINA CARMAN,**
**BARBARA JEAN ROUTH,**

**aka BONNIE ROUTH,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire

with each other, and others known and unknown, to knowingly conduct one or more

financial transactions affecting interstate commerce, knowing that the property involved

in the financial transactions represented the proceeds of a specified unlawful activity, and

which in fact involved the proceeds of Conspiracy to Commit Wire Fraud as charged in

Count 1 of this Indictment in violation of 18 U.S. C. §1349, knowing that the transactions

were designed in whole or in part to conceal and disguise the nature, location, source,

ownership and control of the proceeds of such specified unlawful activity, in violation of

18 U.S.C. § 1956(a)(1)(B)(i).

2.      Paragraphs 1 through 17 of the Introduction to this Indictment are realleged and

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves

by concealing the proceeds derived from selling untaxed cigarettes, and depositing those

proceeds to bank accounts owned or controlled by **JOHN MADDUX, JR.,**

**CHRISTINA CARMAN**, and/or G.H.

## MANNER AND MEANS OF THE CONSPIRACY

4.      During the time period alleged, **BARBARA JEAN ROUTH, aka BONNIE**

**ROUTH,** assisted **JOHN MADDUX, JR.** in setting up a merchant account with false

information through Worldpay US, Inc., identified by Customer Number ending *5814,

in the business name of DSL Ever-Ready Specialty Glass, LLC, a fictitious supplier of

11

paint, glass and wallpaper. The account was used to process credit card payments for untaxed cigarettes and to disguise the identity of the product purchased.

5.      Financial transactions, including the transmission of payments for the untaxed cigarettes through this credit card merchant account into bank accounts utilized by YKTR, Inc., were designed to conceal and disguise the nature, location, source, ownership and control of the proceeds of this fraud. During 2009-2010, total funds deposited to National City or PNC Bank accounts held by YKTR, Inc., in Ashland, Kentucky, derived from this conspiracy was approximately $10,800,000.

6.      For example, on or about November 24, 2009, Worldpay US, Inc. electronically transferred from a location out of state into the account of YKTR, Inc. d/b/a KY Smokes ending in *4351, at the National City Bank in Ashland, Kentucky, the amount of $21,657.93, this money being a portion of the proceeds of credit card payments processed through Worldpay US, Inc. account identified by Customer Number ending *5814.

All in violation of 18 U.S.C. § 1956(h).

## COUNT 3
### 18 U.S.C. § 1349

1.      From on or before November 2008, and continuing through approximately June 2010, in Greenup County, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,
CHRISTINA CARMAN,
JULIE COSCIA,
ANTHONY COSCIA,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire

with each other, and others known and unknown, to knowingly commit Mail Fraud in

violation of 18 U.S.C. § 1341, that is, they devised a scheme and artifice to defraud state

and local taxing authorities of cigarette excise taxes and to obtain money by means of

false or fraudulent pretenses, representations, and promises, by engaging in the sale and

distribution of untaxed cigarettes to United States consumers, and in so doing did cause

to be delivered by theUnited States Postal Service and any private or commercial

interstate carrier, according to the directions thereon, mail matter for the purpose of

executing said scheme and artifice.

2.      Paragraphs 1 through 17 of the Introduction to this Indictment are realleged and

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves

by obtaining and selling untaxed cigarettes at significantly reduced prices in direct

competition with lawfully operated businesses which followed the laws of their

respective states and paid the required taxes on cigarettes they held for sale.

## MANNER AND MEANS OF THE CONSPIRACY

4.      Paragraphs 4 through 12 of Count 1 of this Indictment are realleged and

incorporated by reference herein.

5.      **JULIE COSCIA** and **ANTHONY COSCIA**, who operated an Arizona-based

cigarette call center named ASC Properties d/b/a Cigarette Girl, entered into an

agreement with **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H., (d/b/a

13

YKTR, Inc.), whereby **JULIE COSCIA** and **ANTHONY COSCIA** sent orders to **JOHN MADDUX, JR., CHRISTINA CARMAN,** and G.H., (d/b/a YKTR, Inc.), and **JOHN MADDUX, JR., CHRISTINA CARMAN,** G.H., or employees acting on their behalf, fulfilled orders and shipped untaxed cigarettes from inventory held at YKTR, Inc. directly to the customers of **JULIE COSCIA** and **ANTHONY COSCIA,** using the United States Postal Service or Federal Express. For example, on or about April 19, 2010, at least one of the co-conspirators caused untaxed cigarettes to be mailed from Russell, Kentucky to a customer identified by the initials R.P. located in Fond Du Lac, Wisconsin.

6.    As compensation for services rendered, **JOHN MADDUX, JR., CHRISTINA CARMAN,** and G.H., (d/b/a YKTR, Inc.), invoiced **JULIE COSCIA** and **ANTHONY COSCIA** for the cost of the untaxed cigarettes mailed, as well as a processing fee/commission.

7.    **JULIE COSCIA** and **ANTHONY COSCIA** paid **JOHN MADDUX, JR., CHRISTINA CARMAN,** and G.H. for the cost of the cigarettes shipped, as well as the processing fee/commission, through Automatic Clearing House (ACH).

8.    From February 2009 through November 2010, to facilitate payments by check from the customers of ASC Properties d/b/a Cigarette Girl, **JULIE COSCIA** and **ANTHONY COSCIA** established and used a Checkredi, LLC account through which payments by check could be electronically processed. The account was assigned merchant file code NBN0 by EFT Network, Inc. The application for the account was signed by G.H. and falsely described the business for which the account would be used as

14

engaged in the sale of mail order gifts.

9.      The co-conspirators were aware that excise taxes were not paid for the cigarettes

shipped by YKTR, Inc. on behalf of ASC Properties d/b/a Cigarette Girl and that state

and local cigarette tax reporting requirements were similarly ignored. The co-

conspirators relied on these failures to keep prices low for the success of YKTR, Inc. and

ASC Properties d/b/a Cigarette Girl.

10.     During the time period charged, **JULIE COSCIA** and **ANTHONY COSCIA**

(ASC Properties d/b/a Cigarette Girl) purchased approximately 34,870 packs of cigarettes

from YKTR, Inc. invoiced at approximately $93,700, which upon delivery to their

customers caused state and local governments to be defrauded of excise tax revenues.

All in violation of 18 U.S.C. § 1349.

### COUNT 4
### 18 U.S.C. § 1349

1.      From on or before 2008, and continuing through approximately June 2010, in

Greenup County, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,**
**CHRISTINA CARMAN,**
**DAVID H. WHITE,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire

with each other, and others known and unknown, to knowingly commit Mail Fraud in

violation of 18 U.S.C. § 1341, that is, they devised a scheme and artifice to defraud state

and local taxing authorities of cigarette excise taxes and to obtain money by means of

false or fraudulent pretenses, representations, and promises, by engaging in the sale and

distribution of untaxed cigarettes to United States consumers, and in so doing did cause

15

to be delivered by the United States Postal Service and any private or commercial interstate carrier, according to the directions thereon, mail matter for the purpose of executing said scheme and artifice.

2.     Paragraphs 1 through 17 of the Introduction to this Indictment are realleged and incorporated by reference herein.

### PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for the co-conspirators to enrich themselves by obtaining and selling untaxed cigarettes at significantly reduced prices in direct competition with lawfully operated businesses which followed the laws of their respective states and paid the required taxes on cigarettes they held for sale.

### MANNER AND MEANS OF THE CONSPIRACY

4.     Paragraphs 4 through 12 of Count 1 of this Indictment are realleged and incorporated by reference herein.

5.     **DAVID H. WHITE** (d/b/a AA Discount Cigarettes and internet website discountcigarettesdomestic.com) entered into an agreement with **JOHN MADDUX, JR.**, **CHRISTINA CARMAN**, and G.H. (d/b/a YKTR, Inc.), whereby **DAVID H. WHITE** sent cigarette orders to **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. (d/b/a YKTR, Inc.) and **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H. (d/b/a YKTR, Inc.), and/or employees acting on their behalf, fulfilled and shipped untaxed cigarettes from inventory held at YKTR, Inc. directly to the customers of **DAVID H. WHITE**, using the United States Postal Service or Federal Express.  For example, on or about December 18, 2009, at least one of the co-conspirators caused untaxed cigarettes to

16

be mailed from Russell, Kentucky, to a customer identified by the initials M.F., located in Farmingdale, New York.

6.      As compensation for services rendered, **JOHN MADDUX, JR., CHRISTINA CARMAN,** and G.H. (d/b/a YKTR, Inc.), invoiced **DAVID H. WHITE** for the cost of the untaxed cigarettes shipped, as well as a processing fee/commission.

7.      **DAVID H. WHITE** paid **JOHN MADDUX, JR., CHRISTINA CARMAN,** and G.H. for the cost of the untaxed cigarettes shipped, as well as the processing fee/commission, through Automatic Clearing House (ACH) and check.

8.      The co-conspirators were well aware that excise taxes were not being paid for the cigarettes shipped by YKTR, Inc. on behalf of AA Discount Cigarettes and discountcigarettesdomestic.com, and that state and local cigarette tax reporting requirements were similarly ignored.  The co-conspirators relied on these failures to keep prices low for the success of YKTR, Inc. and AA Discount Cigarettes and discountcigarettesdomestic.com.

9.      During the time period charged, **DAVID H. WHITE** (d/b/a AA Discount Cigarettes and discountcigarettesdomestic.com) purchased approximately 1,634,240 packs of untaxed cigarettes from YKTR, Inc. invoiced at approximately $4,900,000, which upon delivery to their customers caused state and local governments to be defrauded of excise tax revenues.

All in violation of 18 U.S.C. § 1349.

## COUNT 5
### 18 U.S.C. § 1349

1.      From on or before 2008, and continuing through approximately June 2010, in

Greenup County, in the Eastern District of Kentucky and elsewhere,

## JOHN MADDUX, JR.,
## CHRISTINA CARMAN,
## MICHAEL E. SMITH,
## BARBARA JEAN ROUTH,
## aka BONNIE ROUTH,

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire

with each other, and others known and unknown, to knowingly commit Mail Fraud in

violation of 18 U.S.C. § 1341, that is, they devised a scheme and artifice to defraud state

and local taxing authorities of cigarette excise taxes and to obtain money by means of

false or fraudulent pretenses, representations, and promises, by engaging in the sale and

distribution of untaxed cigarettes to United States consumers, and in so doing did cause

to be delivered by United States Postal Service and any private or commercial interstate

carrier, according to the directions thereon, mail matter for the purpose of executing said

scheme and artifice.

2.      Paragraphs 1 through 17 of the Introduction to this Indictment are realleged and

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves

by obtaining and selling untaxed cigarettes at significantly reduced prices in direct

competition with lawfully operated businesses which followed the laws of their

respective states and paid the required taxes on cigarettes they held for sale.

## MANNER AND MEANS OF THE CONSPIRACY

4.      Paragraphs 4 through 12 of Count 1 of this Indictment are realleged and incorporated by reference herein.

5.      **MICHAEL E. SMITH**, (Cigsbymail, paylesssmokes.com, cigsbymail.com, all d/b/a Payless Enterprises, Inc.), entered into an agreement with **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. (d/b/a YKTR, Inc.), whereby **MICHAEL E. SMITH** sent orders to **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. and **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H., and/or employees acting on their behalf, fulfilled and shipped untaxed cigarettes from inventory held at YKTR, Inc. directly to the customers of **MICHAEL E. SMITH**, using the United States Postal Service or Federal Express.  For example, on or about January 21, 2010, at least one of the co-conspirators caused untaxed cigarettes to be mailed from Russell, Kentucky to a customer identified by the initials N.S. located in Norwalk, Ohio.

6.      As compensation for services rendered, **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. (d/b/a YKTR, Inc.) invoiced **MICHAEL E. SMITH** for the cost of the untaxed cigarettes shipped, as well as a processing fee/commission.

7.      **MICHAEL E. SMITH** paid **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. for the cost of the untaxed cigarettes shipped, as well as the processing fee/commission, by check.

8.      The co-conspirators were well aware that excise taxes were not being paid for the cigarettes shipped by YKTR, Inc. on behalf of Cigsbymail, two internet websites known as paylesssmokes.com and cigsbymail.com, all d/b/a Payless Enterprises, Inc., and that

19

state and local cigarette tax reporting requirements were similarly ignored. The co-conspirators relied on these failures to keep prices low for the success of YKTR, Inc. and the businesses of **MICHAEL E. SMITH.**

9.     **BARBARA JEAN ROUTH, aka BONNIE ROUTH,** assisted **MICHAEL E. SMITH** in setting up a merchant account with false information through Worldpay US, Inc. identified by Customer Number ending *3078, in the business name of Payless Enterprises, Inc., posing as a fictitious company selling gifts and novelties. The account was used to process credit card payments for untaxed cigarettes and to disguise the identity of the product purchased.

10.    During the time period charged, **MICHAEL E. SMITH** (d/b/a Cigsbymail, paylesssmokes.com and cigsbymail.com, d/b/a Payless Enterprises, Inc.) purchased approximately 1,568,800 packs of untaxed cigarettes from YKTR, Inc. invoiced at approximately $4,000,000, which upon delivery to his customers caused state and local governments to be defrauded of excise tax revenues.

    All in violation of 18 U.S.C. § 1349.

### INTERNATIONAL OPERATIONS

### COUNT 6
### 18 U.S.C. § 1349

1.     From on or before 2008, and continuing through approximately December 2013, in Greenup County, in the Eastern District of Kentucky and elsewhere,

### JOHN MADDUX, JR.,

CHRISTINA CARMAN,
JULIE COSCIA,
ANTHONY COSCIA,
MICHAEL E. SMITH,
BARBARA JEAN ROUTH,
aka BONNIE ROUTH,
MIKHAIL SEROV,
ALEXANDER SERGEEV,

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire

with each other, and others known and unknown, to knowingly commit Wire Fraud in

violation of 18 U.S.C. §1343, that is, they devised a scheme and artifice to defraud

federal, state and local taxing authorities of cigarette excise taxes, and to obtain money by

means of false and fraudulent pretenses, representations and promises, by engaging in the

sale and distribution of untaxed cigarettes to United States consumers from overseas, and

did transmit and cause to be transmitted by means of wire communication in interstate

and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of

executing said scheme and artifice.

2.      Paragraphs 1 through 18 of the Introduction to this Indictment are realleged and

incorporated by reference herein.


## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves

by obtaining and selling untaxed cigarettes at significantly reduced prices in direct

competition with lawfully operated businesses which followed federal law and the laws

of their respective states and paid the required taxes on cigarettes they held for sale.

## MANNER AND MEANS OF THE CONSPIRACY

21

4.    During the time period alleged, **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. (d/b/a ESR II, Inc. d/b/a AR Trade) fulfilled customer orders for cigarettes from international suppliers who shipped the untaxed cigarettes directly to the customers from overseas.

5.    **CHRISTINA CARMAN** was a listed owner on multiple business bank accounts utilized by ESR II, Inc. d/b/a AR Trade to deposit the revenues of the business. **JOHN MADDUX, JR.** was a signatory on the accounts. Funds were transferred from these accounts to use in operation of ESR II, Inc. d/b/a AR Trade and to purchase both personal and business assets.

6.    **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H., or employees acting on their behalf, accepted orders for cigarettes at significantly reduced prices from their customers. Customers paid for the cigarettes by check, money order, and credit cards.

7.    **MIKHAIL SEROV** and **ALEXANDER SERGEEV** operated a cigarette fulfillment company named Prime Trade Limited which satisfied orders for cigarettes from Ukraine, Moldova and Israel.

8.    **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H., or employees acting on their behalf, ordered untaxed cigarettes from **MIKHAIL SEROV** and **ALEXANDER SERGEEV** to fulfill the orders for **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H.'s United States customers.

9.    **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H, or employees, acting on their behalf, advanced funds by wire to foreign banks to pay **MIKHAIL SEROV** and **ALEXANDER SERGEEV** for the untaxed cigarettes they supplied and shipped.

22

10.    To facilitate the ordering process, **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H, or employees acting on their behalf, were instructed by **MIKHAIL SEROV** and/or **ALEXANDER SERGEEV** to use a unique user name, password, and login to a secure website established by **MIKHAIL SEROV** and/or **ALEXANDER SERGEEV** to place the details of the orders.  These orders were transmitted in interstate and foreign commerce by wire communication from Russell, Kentucky to the business of **MIKHAIL SEROV** and/or **ALEXANDER SERGEEV** overseas.  For example, on or about November 1, 2012, an order for untaxed cigarettes was placed for a customer identified by the initials A.M. to the business of **MIKHAIL SEROV** and/or **ALEXANDER SERGEEV**.

11.    **JULIE COSCIA** and **ANTHONY COSCIA**, on behalf of their Arizona-based cigarette call center named ASC Properties d/b/a Cigarette Girl, ordered untaxed cigarettes from **MIKHAIL SEROV** and **ALEXANDER SERGEEV** to fulfill the orders of their own customers.

12.    **MICHAEL E. SMITH**, on behalf of his Kentucky and California-based cigarette call center named Cigsbymail and two internet websites known as paylesssmokes.com and cigsbymail.com d/b/a Payless Enterprises, Inc., also ordered untaxed cigarettes from **MIKHAIL SEROV** and **ALEXANDER SERGEEV** to fulfill the orders of his own customers.

13.    **JULIE COSCIA** and **ANTHONY COSCIA**, and **MICHAEL E. SMITH** entered into an agreement with **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H, **MIKHAIL SEROV** and **ALEXANDER SERGEEV** to comingle their money and have

23

**JOHN MADDUX, JR., CHRISTINA CARMAN,** and/or G.H, wire it together to pay **MIKHAIL SEROV** and **ALEXANDER SERGEEV** for fulfillment of the untaxed cigarettes ordered by each of the three respective companies.

14. **BARBARA JEAN ROUTH, aka BONNIE ROUTH,** assisted **JOHN MADDUX, JR.** in setting up a merchant account with false information through Worldpay US, Inc. identified by Customer Number ending *5874, in the business name of DSL II, a fictitious supplier of construction material. The account was used to process credit card payments for untaxed cigarettes purchased from ESR II, Inc. d/b/a AR Trade and supplied by **MIKHAIL SEROV** and **ALEXANDER SERGEEV**, and to disguise the identity of the product purchased. A credit card terminal for this account was located at the business in Russell, Kentucky, identified by terminal number LK874249.

15. **BARBARA JEAN ROUTH, aka BONNIE ROUTH,** also assisted **JOHN MADDUX, JR.** in setting up a merchant account with false information through Worldpay US, Inc. identified by Customer Number ending *5814. The account was in the business name of DSL Ever-Ready Specialty Glass, LLC, a fictitious supplier of paint, glass and wallpaper. The account was used to process credit card payments for untaxed cigarettes purchased from ESR II, Inc. d/b/a AR Trade and supplied by **MIKHAIL SEROV** and **ALEXANDER SERGEEV**.

16. **BARBARA JEAN ROUTH, aka BONNIE ROUTH,** assisted **MICHAEL E. SMITH** in setting up a merchant account with false information through Worldpay US, Inc. identified by Customer Number ending *3078. The account was in the business name of Payless Enterprises, a fictitious supplier of gifts and novelties. The account was

used to process credit card payments for untaxed cigarettes purchased from **MICHAEL**

**E. SMITH** by his United States customers, and to disguise the identity of the product

purchased.

17.     **BARBARA JEAN ROUTH, aka BONNIE ROUTH** assisted **JOHN**

**MADDUX, JR.** in setting up two merchant accounts with false information through

Mainstream Merchant Services, using merchant names "DSL 1" and "DSL II",

respectively.  Each merchant account falsely described the business product type to be

"glass replacement."  The accounts were used to process credit card payments for

untaxed cigarettes purchased from ESR II, Inc. d/b/a AR Trade and supplied by

**MIKHAIL SEROV** and **ALEXANDER SERGEEV**, and to disguise the identity of the

product purchased.

18.     The untaxed cigarettes supplied by **MIKHAIL SEROV** and **ALEXANDER**

**SERGEEV** were packaged in a way to disguise the nature of the product from U.S.

Customs and Border Protection  and were shipped directly from overseas to the United

States customers of **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H., **JULIE**

**COSCIA** and **ANTHONY COSCIA**, and **MICHAEL E. SMITH.**

19.     The co-conspirators were well aware that excise taxes were not being paid for the

cigarettes shipped from overseas and that federal, state and local cigarette tax reporting

requirements were similarly ignored.  The co-conspirators relied on these failures to keep

prices low for the success of their respective businesses.

20.     During the time period charged, **JOHN MADDUX, JR., CHRISTINA**

**CARMAN**, G.H., and **JULIE COSCIA** and **ANTHONY COSCIA** and **MICHAEL E.**

SMITH purchased thousands of cartons of untaxed cigarettes from **MIKHAIL SEROV**
and **ALEXANDER SERGEEV**, which, upon delivery to their customers, caused the
federal, state and local governments to be defrauded of excise tax revenues.

21.     In furtherance of the conspiracy, **JOHN MADDUX, JR., CHRISTINA**
**CARMAN**, and G.H. caused approximately $12,500,000 of comingled funds to be wired
overseas.

22.     During the time period charged, ESR II, Inc. d/b/a AR Trade generated
approximately $17,900,000 in sales of untaxed cigarettes to its customers and caused
federal, state and local governments to be defrauded of approximately $19,000,000 in
excise tax revenues of which approximately $16,900,000 was the result of the fulfillment
of customer orders by **MIKHAIL SEROV** and **ALEXANDER SERGEEV**.

        All in violation of 18 U.S.C. § 1349.

**COUNT 7**
**18 U.S.C. § 1956(h)**

1.      From on or before March 2009, and continuing through approximately April 2011,
in Greenup and Boyd Counties, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,**
**CHRISTINA CARMAN,**
**BARBARA JEAN ROUTH,**
**aka BONNIE ROUTH,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire
with each other, and others known and unknown, to knowingly conduct one or more
financial transactions affecting interstate commerce and foreign commerce, knowing that
the property involved in the financial transactions represented the proceeds of a specified

unlawful activity, and which in fact involved the proceeds of Conspiracy to Commit Wire Fraud as charged in Count 6 of this Indictment in violation of 18 U.S. C. §1349, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of such specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

2.      Paragraphs 1 through 18 of the Introduction to this Indictment are realleged and incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves by concealing the proceeds derived from selling untaxed cigarettes, and depositing those proceeds into bank accounts owned or controlled by **JOHN MADDUX, JR.**, **CHRISTINA CARMAN,** and/or G.H.

## MANNER AND MEANS OF THE CONSPIRACY

4.      During the time period alleged, **BARBARA JEAN ROUTH, aka BONNIE ROUTH,** assisted **JOHN MADDUX, JR.** in setting up a merchant account with false information through Worldpay US, Inc. identified by Customer Number ending *5874. The account was in the business name of DSL II, a fictitious supplier of construction material. The account was used to process credit card payments for untaxed cigarettes purchased from ESR II, Inc. d/b/a AR Trade and supplied by **MIKHAIL SEROV** and **ALEXANDER SERGEEV**.

5.      **BARBARA JEAN ROUTH, aka BONNIE ROUTH,** also assisted **JOHN MADDUX, JR.** in setting up a merchant account with false information through

27

Worldpay US, Inc. identified by Customer Number ending *5814.  The account was in the business name of DSL Ever-Ready Specialty Glass, LLC, a fictitious supplier of paint, glass and wallpaper.  The account was used to process credit card payments for untaxed cigarettes purchased from ESR II, Inc. d/b/a AR Trade and supplied by **MIKHAIL SEROV** and **ALEXANDER SERGEEV**.

6.      Financial transactions, including the transmission of payments for the untaxed cigarettes through both of these credit card merchant accounts into bank accounts utilized by ESR II, Inc. were designed to conceal and disguise the nature, location, source, ownership and control of the proceeds of this fraud.  During 2009-2011, total funds deposited to PNC Bank accounts held by ESR II, Inc. in Ashland, Kentucky, that were derived from this conspiracy was approximately $1,900,000.

7.      For example, on or about February 7, 2011, Worldpay US, Inc. electronically transferred from a location out of state into the account of ESR II, Inc. Credit Card Account ending in *0639, at the PNC Bank in Ashland, Kentucky, the amount of $3,684.77.  This money was a portion of the proceeds of credit card payments processed through Worldpay US, Inc. account identified by Customer Number ending *5874, which was  initially processed through DSL II processing terminal LK874249, located in Russell, Kentucky.

All in violation of 18 U.S.C. § 1956(h).

## COUNT 8
### 18 U.S.C. § 1956(h)

1.      From on or before May 2008, and continuing through approximately March 2011, in Boyd County, in the Eastern District of Kentucky and elsewhere,

28

**JOHN MADDUX, JR.,
CHRISTINA CARMAN,
MIKHAIL SEROV,
ALEXANDER SERGEEV,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire

with each other, and others known and unknown, to knowingly transport, transmit and

transfer a monetary instrument and funds from a place in the United States to and through

a place outside the United States, with the intent to promote the carrying on of a specified

unlawful activity, that is Conspiracy to Commit Wire Fraud as charged in Count 6 of this

Indictment in violation of 18 U.S.C. §1349, in violation of 18 U.S.C. §1956(a)(2)(A).

2.      Paragraphs 1 through 18 of the Introduction to this Indictment are realleged and

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves

by electronically transferring funds to overseas accounts to fulfill customer orders for

untaxed cigarettes from **MIKHAIL SEROV** and **ALEXANDER SERGEEV**, who

shipped the untaxed cigarettes directly to the customers from overseas.

## MANNER AND MEANS OF THE CONSPIRACY

4.      During the time period alleged, **JOHN MADDUX, JR., CHRISTINA**

**CARMAN,** and/or G.H. electronically transferred approximately $5,400,000 from PNC

Bank accounts held by ESR II, Inc. in Ashland, Kentucky, to overseas accounts owned or

controlled by **MIKHAIL SEROV** and **ALEXANDER SERGEEV** to acquire untaxed

cigarettes from **MIKHAIL SEROV** and **ALEXANDER SERGEEV**.

29

5.     For example, on or about July 16, 2010, funds were electronically transferred from the account for ESR II, Inc. ending in *9831, at the PNC Bank in Ashland, Kentucky, in the amount of $50,000 to AR Trade Company LTD, Norvik Bank, Latvia.

All in violation of 18 U.S.C. § 1956(h).

## COUNT 9
## 18 U.S.C. § 1349

1.     From on or before October 2010, and continuing through approximately January 2013, in Greenup County, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,**
**CHRISTINA CARMAN,**
**JULIE COSCIA,**
**ANTHONY COSCIA,**
**BARBARA JEAN ROUTH,**
**aka BONNIE ROUTH,**
**YURIY PAK,**

and another unindicted individual identified as G.H. (now deceased), did conspire with each other, and others known and unknown, to knowingly commit Wire Fraud in violation of 18 U.S.C. § 1343, that is, they devised a scheme and artifice to defraud federal, state and local taxing authorities of cigarette excise taxes, and to obtain money by means of false and fraudulent pretenses, representations and promises, by engaging in the sale and distribution of untaxed cigarettes to United States consumers from overseas, and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing said scheme and artifice.

2.     Paragraphs 1 through 19 of the Introduction to this Indictment are realleged and

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves

by obtaining and selling untaxed cigarettes at significantly reduced prices in direct

competition with lawfully operated businesses which followed federal law and the laws

of their respective states and paid the required taxes on cigarettes they held for sale.

## MANNER AND MEANS OF THE CONSPIRACY

4.      **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. (d/b/a ESR II, Inc.

d/b/a AR Trade), or employees acting on their behalf, accepted orders for untaxed

cigarettes at significantly reduced prices from their customers. Customers paid for the

untaxed cigarettes by check, money order, and credit cards.

5.      **YURIY PAK** operated a cigarette fulfillment company known as Galastore.com

owned and operated by Cendano Corporation in Kyrgyzstan which satisfied orders for

cigarettes from Kyrgyzstan.

6.      **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H, or employees acting on

their behalf, ordered untaxed cigarettes from **YURIY PAK** to fulfill the orders of **JOHN

MADDUX, JR., CHRISTINA CARMAN**, and G.H.'s customers.

7.      **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H, or employees, acting

on their behalf, advanced funds by wire to foreign banks to prepay **YURIY PAK** for the

untaxed cigarettes he supplied.

8.      To facilitate the ordering process, **JOHN MADDUX, JR., CHRISTINA

CARMAN**, G.H, or employees acting on their behalf, were instructed by **YURIY PAK**

to use a unique user name, password to login to a secure website established by **YURIY PAK** to place the details of the orders. These orders were transmitted in interstate and foreign commerce by wire communication from Russell, Kentucky to the business of **YURIY PAK** overseas. For example, on or about November 1, 2012, an order for untaxed cigarettes was placed for a customer identified by the initials J.W. to the business of **YURIY PAK**.

9.     **JULIE COSCIA** and **ANTHONY COSCIA**, on behalf of their Arizona-based cigarette call center named ASC Properties d/b/a Cigarette Girl, ordered untaxed cigarettes from **YURIY PAK** to fulfill the orders of their own customers.

10.     **JULIE COSCIA** and **ANTHONY COSCIA** entered into an agreement with **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H, and **YURIY PAK** to comingle their money and have **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H, or employees acting on their behalf, wire it together to pay **YURIY PAK** for fulfillment of the untaxed cigarettes ordered by each of the two respective companies.

11.     **BARBARA JEAN ROUTH, aka BONNIE ROUTH**, assisted **JOHN MADDUX, JR.** in setting up two merchant accounts with false information through Mainstream Merchant Services, using merchant names "DSL 1" and "DSL II", respectively. Each merchant account falsely described the business product type to be "glass replacement." The accounts were used to process credit card payments for untaxed cigarettes purchased from ESR II, Inc. d/b/a AR Trade and supplied by **YURIY PAK**, and to disguise the identity of the product purchased.

12.     The untaxed cigarettes supplied by **YURIY PAK** were packaged in a way to

32

disguise the nature of the product from U.S. Customs and Border Protection and were shipped directly from overseas to the United States customers of **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H, and **JULIE COSCIA** and **ANTHONY COSCIA**.

13.     The co-conspirators were well aware that excise taxes were not being paid for the cigarettes shipped from overseas and that federal, state and local cigarette tax reporting requirements were similarly ignored. The co-conspirators relied on these failures to keep prices low for the success of their respective businesses.

14.     During the time period charged, **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H., **JULIE COSCIA,** and **ANTHONY COSCIA** purchased thousands of cartons of untaxed cigarettes from **YURIY PAK**, which upon delivery to their customers directly from fulfillment centers overseas, caused state and local governments to be defrauded of excise tax revenues.

15.     In furtherance of the conspiracy, **JOHN MADDUX, JR., CHRISTINA CARMAN,** and/or G.H. caused approximately $240,000 of comingled funds to be wired overseas.

16.     During the time period charged, ESR II, Inc. d/b/a AR Trade generated approximately $17,900,000 in sales of untaxed cigarettes to its customers and caused federal, state and local governments to be defrauded of approximately $19,000,000 in excise tax revenues of which approximately $345,000 was the result of the fulfillment of customer orders by **YURIY PAK**.

All in violation of 18 U.S.C. § 1349.

### COUNT 10
### 18 U.S.C. § 1349

1.      From on or before December 2012, and continuing through approximately

December 2013, in Greenup County, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,**
**CHRISTINA CARMAN,**
**JULIE COSCIA,**
**ANTHONY COSCIA,**
**DAVID H. WHITE,**
**BARBARA JEAN ROUTH,**
**aka BONNIE ROUTH,**
**JONATHAN MORGAN, and**
**JACK WEIZMAN**

did conspire with each other, and others known and unknown, to knowingly commit Wire

Fraud in violation of 18 U.S.C. § 1343, that is, they devised a scheme and artifice to

defraud federal, state and local taxing authorities of cigarette excise taxes, and to obtain

money by means of false and fraudulent pretenses, representations and promises, by

engaging in the sale and distribution of untaxed cigarettes to United States consumers

from overseas, and did transmit and cause to be transmitted by means of wire

communication in interstate and foreign commerce, writings, signs, signals, pictures and

sounds for the purpose of executing said scheme and artifice.

2.      Paragraphs 1 through 21of the Introduction to this Indictment are realleged and

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves

by obtaining and selling untaxed cigarettes at significantly reduced prices in direct

34

competition with lawfully operated businesses which followed federal law and the laws of their respective states and paid the required taxes on cigarettes they held for sale.

## MANNER AND MEANS OF THE CONSPIRACY

4.      **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. (d/b/a ESR II, Inc. d/b/a AR Trade), or employees acting on their behalf, accepted orders for untaxed cigarettes at significantly reduced prices from their customers. Customers paid for the untaxed cigarettes by check, money order, and credit cards.

5.      On or about December 2012, **DAVID H. WHITE** introduced **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H. to **JONATHAN MORGAN** and **JACK WEIZMAN**, for the purpose of engaging in the sale and delivery of untaxed cigarettes.

6.      **JONATHAN MORGAN** acted as a representative of Dutyfreedepot.com, a cigarette fulfillment company, owned and operated by Classica International Express 2007 Ltd. in Israel, which satisfied orders for cigarettes from Israel.

7.      **JACK WEIZMAN** was the chief executive officer of dutyfreedepot.com.

8.      **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H., or employees acting on their behalf, ordered untaxed cigarettes from **JONATHAN MORGAN** and **JACK WEIZMAN**, to fulfill the orders of **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H.'s customers.

9.      **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H, or employees acting on their behalf, advanced funds by wire to foreign bank accounts in Cyprus and Israel to prepay **JONATHAN MORGAN** and/or **JACK WEIZMAN** for the untaxed cigarettes they supplied.

35

10. To facilitate the process, **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H, or their employees acting on their behalf, forwarded customer orders formatted on a spreadsheet to Dutyfreedepot.com. These orders were transmitted in interstate and foreign commerce by wire communication from Russell, Kentucky to representatives of dutyfreedepot.com overseas. For example, on or about January 31, 2013, a spreadsheet referencing orders for untaxed cigarettes accepted from customers between January 29, 2013, and through January 30, 2013, was transmitted by wire (email) overseas from Russell, Kentucky.

11. **JULIE COSCIA** and **ANTHONY COSCIA**, on behalf of their Arizona-based cigarette call center named ASC Properties d/b/a Cigarette Girl, ordered untaxed cigarettes from **JONATHAN MORGAN** and **JACK WEIZMAN** to fulfill the orders of their own customers.

12. Between January and February 2013, **JULIE COSCIA** and **ANTHONY COSCIA** entered into an agreement with **JOHN MADDUX, JR., CHRISTINA CARMAN**, G.H, **JONATHAN MORGAN** and/or **JACK WEIZMAN** to comingle their money and have **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H; or employees acting on their behalf, wire it together to pay **JONATHAN MORGAN** and/or **JACK WEIZMAN** for fulfillment of untaxed cigarettes ordered by each of the two respective companies.

13. **BARBARA JEAN ROUTH, aka BONNIE ROUTH**, assisted **JOHN MADDUX, JR.** in setting up two merchant accounts with false information through Mainstream Merchant Services, using merchant names "DSL 1" and "DSL II",

36

respectively. Each merchant account falsely described the business product type to be "glass replacement." The accounts were used to process credit card payments for untaxed cigarettes purchased from ESR II, Inc. d/b/a AR Trade and supplied by **JONATHAN MORGAN** and **JACK WEIZMAN**, and to disguise the identity of the product purchased.

14.     The untaxed cigarettes supplied by **JONATHAN MORGAN** and/or **JACK WEIZMAN** were packaged in a way to disguise the nature of the product from U.S. Customs and Border Protection and were shipped directly from overseas to the United States customers of **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H, and **JULIE COSCIA** and **ANTHONY COSCIA**.

15.     The co-conspirators were well aware that excise taxes were not being paid for the cigarettes shipped from overseas and that federal, state and local cigarette tax reporting requirements were similarly ignored. The co-conspirators relied on these failures to keep prices low for the success of their respective businesses.

16.     During the time period charged, **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H., and **JULIE COSCIA** and **ANTHONY COSCIA** purchased thousands of cartons of untaxed cigarettes from **JONATHAN MORGAN** and/or **JACK WEIZMAN**, which upon delivery to their customers directly from fulfillment centers overseas, caused the federal, state and local governments to be defrauded of excise tax revenues.

37

17.    In furtherance of the conspiracy, **JOHN MADDUX, JR., CHRISTINA**

**CARMAN**, and/or G.H. caused approximately $1,200,000 of comingled funds to be

wired overseas.

18.    During the time period charged, ESR II, Inc. d/b/a AR Trade generated

approximately $17,900,000 in sales of untaxed cigarettes to its customers and caused

federal, state and local governments to be defrauded of approximately $19,000,000 in

excise tax revenues of which approximately $1,700,000 was the result of the fulfillment

of customer orders by **JOHATHAN MORGAN** and **JACK WEIZMAN.**

All in violation of 18 U.S.C. § 1349.

## COUNT 11
## 18 U.S.C. § 1956(h)

1.    From on or before April 2011, and continuing through approximately September

2013, in Greenup and Boyd Counties, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR
CHRISTINA CARMAN,
BARBARA JEAN ROUTH,
aka BONNIE ROUTH,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire

with each other, and others known and unknown, to knowingly conduct one or more

financial transactions affecting interstate commerce and foreign commerce, knowing that

the property involved in the financial transactions represented the proceeds of a specified

unlawful activity, and which in fact involved the proceeds of Conspiracy to Commit Wire

Fraud as charged in Counts 6, 9 and 10 of this Indictment in violation of 18 U.S. C.

§1349, knowing that the transactions were designed in whole or in part to conceal and

disguise the nature, location, source, ownership and control of the proceeds of such specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

2.      Paragraphs 1 through 21 of the Introduction to this Indictment are realleged and incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves by concealing the proceeds derived from selling untaxed cigarettes, which were derived from fraudulent pretenses or misrepresentations, and depositing those proceeds into bank accounts owned or controlled by **JOHN MADDUX, JR., CHRISTINA CARMAN,** and/or G.H.

## MANNER AND MEANS OF THE CONSPIRACY

4.      During the time period alleged, **BARBARA JEAN ROUTH, aka BONNIE ROUTH**, assisted **JOHN MADDUX, JR.** in setting up two merchant accounts with false information through Mainstream Merchant Services, using merchant names "DSL 1" and "DSL II", respectively. Each merchant account falsely described the business product type to be "glass replacement." The accounts were used to process credit card payments for untaxed cigarettes purchased from ESR II, Inc. d/b/a AR Trade and supplied by **MIKHAIL SEROV** and **ALEXANDER SERGEEV, YURIY PAK**, and **JONATHAN MORGAN** and/or **JACK WEIZMAN**, and to disguise the identity of the product purchased.

5.      Financial transactions, including the transmission of payments for the untaxed cigarettes through these credit card merchant accounts into bank accounts utilized by

ESR II, Inc. were designed to conceal and disguise the nature, location, source, ownership and control of the proceeds of this fraud. During 2011-2013, total funds deposited into Kentucky Farmers Bank accounts held by ESR II, Inc. in Ashland, Kentucky, that were derived from these two merchant accounts was approximately $3,500,000.

6.     For example, on or about April 29, 2011, Merchant BNKCD (Mainstream Merchant Services) electronically transferred from a location out of state into the account of ESR II Inc. (#2 Acct) ending in *3544, at the Kentucky Farmers Bank in Ashland, Kentucky, the amount of $3,661.83, this money being the proceeds of credit card payments processed through Mainstream Merchant Services account "DSL 1", further identified as DSL Ever-Ready Specialty Glass, LLC merchant account *1889.

   All in violation of 18 U.S.C. § 1956(h).


## INTERNATIONAL OPERATIONS – Processing of Funds

### COUNT 12
### 18 U.S.C. § 1349

1.     From on or before January 2008, and continuing through approximately November 2010, in Greenup and Fayette Counties, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,
CHRISTINA CARMAN,
MIKHAIL SEROV,
ALEXANDER SERGEEV,**

40

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire with each other, and others known and unknown, to knowingly commit Wire Fraud in violation of 18 U.S.C. § 1343, that is, they devised a scheme and artifice to defraud federal, state and local taxing authorities of cigarette excise taxes, and to obtain money by means of false and fraudulent pretenses, representations and promises, by engaging in the sale and distribution of untaxed cigarettes to United States consumers from overseas, and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing said scheme and artifice.

2.     Paragraphs 1 through 18 of the Introduction of this Indictment are realleged and incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for the co-conspirators to enrich themselves by obtaining and selling untaxed cigarettes at significantly reduced prices in direct competition with lawfully operated businesses which followed federal law and the laws of their respective states and paid the required taxes on cigarettes they held for sale.

## MANNER AND MEANS OF THE CONSPIRACY

4.     **MIKHAIL SEROV** and **ALEXANDER SERGEEV** operated a cigarette fulfillment company named Prime Trade Limited which satisfied orders for cigarettes from Ukraine, Moldova and Israel. In addition to fulfilling cigarette orders for other businesses, **MIKHAIL SEROV** and **ALEXANDER SERGEEV** sold untaxed cigarettes to their own individual United States customers.

41

5.     Due to difficulties associated with accepting checks from their customers drawn on United States bank accounts and depositing them into foreign accounts, **MIKHAIL SEROV** and **ALEXANDER SERGEEV** entered into an agreement with **JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H., whereby **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H. set up a check processing system in the United States.

6.     To process the checks, **JOHN MADDUX, JR**. established an account through Checkredi, LLC. G.H. signed an ACH processing agreement with Checkredi, LLC for this service. The ACH processing agreement was faxed on or about March 23, 2006, by one or more of the co-conspirators, to Checkredi, LLC in Lexington, Fayette County, Kentucky, from ESR I, an associated business located in Pinetop, Arizona.

7.     Per the agreement, it was misrepresented by G. H. that the electronic payment services would be performed for the benefit of companies identified as ASR Inc.- ESR III, which engaged in the sale of mail order gifts.

8.     Checkredi, LLC, thereafter, provided the agreement to EFT Network, Inc., which allowed access to EFT Network, Inc.'s web-based processing system. EFT Network, Inc. assigned the account merchant file code NBID. An associated bank account established with Wells Fargo Bank in Pinetop, Arizona, which was selected and controlled by **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H., was designated to receive the payments upon transfer from the customer's accounts.

9.     EFT Network, Inc. provided access to the debiting system with a unique user name and password. This allowed **JOHN MADDUX, JR**., or others authorized by him,

42

to login into the system and cause debits to be made from the accounts of customers who had provided their bank account, routing number, and an amount authorized for withdrawal.

10.     The agreement executed with Checkredi, LLC included fees and expenses pursuant to the prices and payment terms of the agreement which was billed monthly. **JOHN MADDUX, JR., CHRISTINA CARMAN,** and/or G.H. authorized the monthly payment to be electronically debited and transmitted by wire, in interstate commerce, from an account at Wells Fargo Bank in Pinetop, Arizona to Checkredi, LLC's bank account at the Central Bank and Trust company located in Lexington, Kentucky. For purposes of processing payments for **MIKHAIL SEROV** and **ALEXANDER SERGEEV**, these fees and expenses were paid from on or before January 2008 through December 2010. For example, on or about September 15, 2010, fees and expenses, including a monthly premium, were paid by wire as described, that is, Checkredi, LLC electronically debited the account of ASR, Inc./ESR I, ending in *1352, at Wells Fargo Bank in Pinetop, Arizona, in the amount of $488.50, related to ASR I, Inc./ESR III, LLC merchant account NBID, and deposited those funds into Checkredi, LLC's account at the Central Bank and Trust Company in Lexington, Kentucky.

11.     **JOHN MADDUX, JR.** and/or G.H. provided **MIKHAIL SEROV** and **ALEXANDER SERGEEV** with the unique user name and password which allowed them, or employees acting on their behalf, to process payments made by their own customers.

12.     Upon deposit of the payment funds into a United States bank account controlled

43

by **JOHN MADDUX, JR.**, **CHRISTINA CARMAN**, and/or G.H., **JOHN MADDUX, JR.**, **CHRISTINA CARMAN**, and/or G.H. caused the proceeds of the sale of these untaxed cigarettes to be wired from the bank account to the bank account of **MIKHAIL SEROV** and **ALEXANDER SERGEEV**, after deducting a fee of approximately six to seven percent.

13.    Upon receipt of these funds, **MIKHAIL SEROV** and **ALEXANDER SERGEEV** caused the orders for untaxed cigarettes to be fulfilled. The untaxed cigarettes were packaged in a way to disguise the nature of the product from U.S. Customs and Border Protection and they were shipped directly from overseas to the United States customers of **MIKHAIL SEROV** and **ALEXANDER SERGEEV**.

14.    The co-conspirators were well aware that excise taxes were not being paid for the cigarettes shipped from overseas for the customers of **MIKHAIL SEROV** and **ALEXANDER SERGEEV**, and that federal, state and local cigarette tax reporting requirements were similarly ignored. The co-conspirators relied on these failures to keep prices low for the success of the foreign business operations with which **MIKHAIL SEROV** and **ALEXANDER SERGEEV** were associated and for the benefit of **JOHN MADDUX, JR.**, **CHRISTINA CARMAN**, and G.H.

15.    During the time period charged, settlement credits (that being consolidated payments of customer deposits) were transferred by EFT Network, Inc. from their sponsoring bank to accounts controlled by **JOHN MADDUX, JR.**, **CHRISTINA CARMAN**, and/or G.H., totaling approximately $3,700,000. Delivery of the untaxed

cigarettes directly from fulfillment centers overseas, caused federal, state and local

governments to be defrauded of excise tax revenues.

16.     In furtherance of the conspiracy, **JOHN MADDUX, JR., CHRISTINA**

**CARMAN,** and/or G.H. caused approximately $3,500,000 to be wired overseas to

**MIKHAIL SEROV** and **ALEXANDER SERGEEV.**

All in violation of 18 U.S.C. § 1349.

## COUNT 13
## 18 U.S.C. § 1956(h)

1.      From on or before January 2008, and continuing through approximately

November 2010, in Fayette County, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,
CHRISTINA CARMAN,
MIKHAIL SEROV,
ALEXANDER SERGEEV,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire

with each other, and others known and unknown, to knowingly conduct one or more

financial transactions affecting interstate commerce and foreign commerce, knowing that

the property involved in the financial transactions represented the proceeds of a specified

unlawful activity, and which in fact involved the proceeds of Conspiracy to Commit Wire

Fraud as charged in Count 12 of this Indictment in violation of 18 U.S. C. § 1349,

knowing that the transactions were designed in whole or in part to conceal and disguise

the nature, location, source, ownership and control of the proceeds of such specified

unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

2.      Paragraphs 1 through 18 of the Introduction to this Indictment are realleged and

45

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for the co-conspirators to enrich themselves by processing check payments related to untaxed cigarette orders for **MIKHAIL SEROV** and **ALEXANDER SERGEEV** using a fraudulent payment processing account established by **JOHN MADDUX, JR.**, **CHRISTINA CARMAN**, and/or G.H.

## MANNER AND MEANS OF THE CONSPIRACY

4.    Financial transactions, including the transmission of payments related to the selling of untaxed cigarettes through the account identified in Count 12 into bank accounts utilized by ASR I, Inc./ESR I, LLC, were designed to conceal and disguise the nature, location, source, ownership and control of the proceeds of this fraud. During 2008-2010, total funds deposited to Wells Fargo Bank accounts held by ASR I, Inc./ESR I, LLC in Pinetop, Arizona, from EFT Network, Inc., that were derived from this conspiracy was approximately $3,700,000.

5.    For example, on or about August 27, 2010, EFT Network, Inc. electronically transferred from an out of state bank into the Wells Fargo Bank account of ASR I, Inc./ESR I, LLC ending in *1352, the amount of $13,955.85. The subsequent month, on or about September 15, 2010, fees and expenses, including a monthly premium for the prior month's activity, were paid by wire, that is, Checkredi, LLC electronically debited the account of ASR I, Inc./ESR I, LLC, ending in *1352, the amount of $488.50, and deposited those funds into Checkredi, LLC's account at the Central Bank and Trust Company in Lexington, Kentucky.

46

All in violation of 18 U.S.C. § 1956(h).

## COUNT 14
## 18 U.S.C. § 1956(h)

1.    From on or before January 2008, and continuing through approximately March

2013, in Greenup and Boyd Counties, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,
CHRISTINA CARMAN,
JULIE COSCIA,
ANTHONY COSCIA,
MICHAEL E. SMITH,
MIKHAIL SEROV,
ALEXANDER SERGEEV,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire

with each other, and others known and unknown, to knowingly transport, transmit and

transfer a monetary instrument and funds from a place in the United States to and through

a place outside the United States, with the intent to promote the carrying on of a specified

unlawful activity, that is, Conspiracy to Commit Wire Fraud as charged in Counts 6 and

12 of this Indictment in violation of 18 U.S.C. § 1349, in violation of 18 U.S.C.

§ 1956(a)(2)(A).

2.    Paragraphs 1 through 18 of the Introduction to this Indictment are realleged and

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for the co-conspirators to enrich themselves

by electronically transferring commingled funds to overseas accounts to acquire untaxed

cigarettes from **MIKHAIL SEROV** and **ALEXANDER SERGEEV** and proceeds

related to check processing for untaxed cigarette orders for **MIKHAIL SEROV** and **ALEXANDER SERGEEV**.

### MANNER AND MEANS OF THE CONSPIRACY

4.     Customer deposits were made into accounts at Kentucky Farmer's Bank and PNC Bank in Ashland, Kentucky. These funds were wired in interstate commerce to accounts held at Wells Fargo Bank in Pinetop, Arizona. For example, on or about December 7, 2010, funds were electronically transferred from the account for ESR II, Inc. ending *9831, at PNC Bank in Ashland, Kentucky in the amount of $75,000 to the account for ASR I, Inc. ending in *0379, at Wells Fargo Bank in Pinetop, Arizona. The funds were then transferred to another Wells Fargo Bank account and were eventually commingled with funds from co-conspirators to be wired to **MIKHAIL SEROV** and **ALEXANDER SERGEEV**.

5.     On or about December 10, 2010, commingled funds were electronically transferred from the account for ASR I, Inc./ESR I, LLC ending in *1352, at Wells Fargo Bank in Pinetop, Arizona in the amount of $63,500 to Primetrade Group LTD., Voralberger Landes, UND Hypotheken Bank, Austria, consisting of $50,000 in funds from **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H., $7,500 from **MICHAEL E. SMITH** and $6,000 from **JULIE COSCIA** and **ANTHONY COSCIA**.

6.     During the time period alleged, **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H. electronically transferred approximately $10,800,000 from Wells Fargo accounts held by ASR I, Inc./ESR I, LLC in Pinetop, Arizona, which included commingled funds provided by **JOHN MADDUX, JR., CHRISTINA**

48

**CARMAN**, G.H., **JULIE COSCIA**, **ANTHONY COSCIA**, and **MICHAEL E. SMITH**, to overseas accounts owned or controlled by **MIKHAIL SEROV** and **ALEXANDER SERGEEV**. This amount also included the proceeds related to check processing for untaxed cigarette orders for **MIKHAIL SEROV** and **ALEXANDER SERGEEV** for their own customers.

All in violation of 18 U.S.C. § 1956(h).

## COUNT 15
## 18 U.S.C. § 1349

1.     From on or before September 2008, and continuing through approximately November 2010, in Greenup and Fayette Counties, in the Eastern District of Kentucky and elsewhere,

## JOHN MADDUX, JR.,
## CHRISTINA CARMAN,
## YURIY PAK,

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire with each other, and others known and unknown, to knowingly commit Wire Fraud in violation of 18 U.S.C. § 1343, that is, they devised a scheme and artifice to defraud federal, state and local taxing authorities of cigarette excise taxes, and to obtain money by means of false and fraudulent pretenses, representations and promises, by engaging in the sale and distribution of untaxed cigarettes to United States consumers from overseas, and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing said scheme and artifice.

49

2.      Paragraphs 1 through 19 of the Introduction of this Indictment are realleged and incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves by obtaining and selling untaxed cigarettes at significantly reduced prices in direct competition with lawfully operated businesses which followed federal law and the laws of their respective states and paid the required taxes on cigarettes they held for sale.

## MANNER AND MEANS OF THE CONSPIRACY

4.      **YURIY PAK** operated a cigarette fulfillment company known as Galastore.com owned and operated by Cendano Corporation in Kyrgyzstan which satisfied orders for cigarettes from Kyrgyzstan.  In addition to fulfilling cigarette orders for other businesses, **YURIY PAK** sold untaxed cigarettes to his own individual United States customers.

5.      Due to difficulties associated with accepting checks from his customers drawn on United States bank accounts and depositing them into foreign accounts, **YURIY PAK** entered into an agreement with **JOHN MADDUX, JR.**, **CHRISTINA CARMAN,** and G.H., whereby **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H. set up a check processing system in the United States.

6.      To process the checks, **JOHN MADDUX, JR**. established an account through Checkredi, LLC.  G.H. signed an ACH processing agreement with Checkredi, LLC for this service.  The ACH processing agreement was faxed in November 2005, by one or more of the co-conspirators, to Checkredi, LLC in Lexington, Fayette County, Kentucky, from ESR I, an associated business, located in Pinetop, Arizona.

7.     Per the agreement, it was misrepresented by G.H. that the electronic payment services would be performed for the benefit of companies identified as ASR, Inc./ESR I, which engaged in the sale of mail order gifts.

8.     Checkredi, LLC, thereafter, provided the agreement to EFT Network, Inc., which allowed access to EFT Network, Inc.'s web-based processing system. EFT Network, Inc. assigned the file number NBFK for the agreement. An associated bank account established with Wells Fargo Bank in Pinetop, Arizona, which was selected and controlled by **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H., was designated to receive the payments upon transfer from the customer's accounts.

9.     EFT Network, Inc. provided access to the debiting system with a unique user name and password. This allowed **JOHN MADDUX, JR.**, or others authorized by him, to login to the system and cause debits to be made from the accounts of customers who had provided their bank account, routing number, and an amount authorized for withdrawal.

10.    The agreement executed with Checkredi, LLC included fees and expenses pursuant to the prices and payment terms of the agreement which was billed monthly. For purposes of processing payments for **YURIY PAK**, these fees and expenses were paid from September 2008 through December 2010. **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H. authorized Checkredi, LLC to debit the monthly payment electronically and transmit it by wire from an account at National City Bank or, at times, PNC Bank in Ashland, Kentucky. The wire transmissions were required to pass through processing centers in Cleveland, Ohio for National City Bank

51

and Pittsburgh, Pennsylvania for PNC Bank, before the money was finally paid to

Checkredi, LLC's bank account at the Central Bank and Trust Company located in

Lexington, Kentucky. For example, on or about August 13, 2010, fees and expenses,

including a monthly premium, were paid by wire, that is, Checkredi, LLC electronically

debited the account of Your Kentucky Tobacco Resource LLC ending in *8432, at the

PNC Bank in Ashland, Kentucky, in the amount of $77.50 and deposited those funds into

Checkredi, LLC's account at the Central Bank and Trust Company in Lexington,

Kentucky.

11.     **JOHN MADDUX, JR.** and/or G.H. provided **YURIY PAK** with the unique user

name and password which allowed him, or employees acting on his behalf, to process

payments made by his own customers.

12.     Upon deposit of the payment funds into a United States bank account controlled

by **JOHN MADDUX, JR., CHRISTINA CARMAN,** and/or G.H., **JOHN MADDUX,**

**JR., CHRISTINA CARMAN,** and/or G.H. caused the proceeds of the sale of these

untaxed cigarettes to be wired from the bank account to the bank account of **YURIY**

**PAK,** after deducting a fee of approximately six to seven percent.

13.     Upon receipt of these funds, **YURIY PAK** caused the orders for untaxed

cigarettes to be fulfilled. The untaxed cigarettes were packaged in a way to disguise the

nature of the product from U.S. Customs and Border Protection and they were shipped

directly from overseas to the United States customers of **YURIY PAK**.

14.     The co-conspirators were well aware that excise taxes were not being paid for the

cigarettes shipped from overseas for the customers of **YURIY PAK,** and that federal,

52

state and local cigarette tax reporting requirements were similarly ignored.  The co-
conspirators relied on these failures to keep prices low for the success of the foreign
business operations with which **YURIY PAK** was associated and for the benefit of
**JOHN MADDUX, JR., CHRISTINA CARMAN**, and G.H.

15.     During the time period charged, settlement credits (that being consolidated
payments of customer deposits) totaling $700,000 were transferred by EFT Network, Inc.
from its sponsoring bank to accounts controlled by **JOHN MADDUX, JR.**,
**CHRISTINA CARMAN**, and/or G.H.  Delivery of the untaxed cigarettes directly from
fulfillment centers overseas caused federal, state and local governments to be defrauded
of excise tax revenues.

16.     In furtherance of the conspiracy, **JOHN MADDUX, JR., CHRISTINA
CARMAN**, and/or G.H. caused approximately $670,000 to be wired overseas to **YURIY
PAK.**

        All in violation of 18 U.S.C. § 1349.

## COUNT 16
### 18 U.S.C. § 1956(h)

1.     From on or before September 2008, and continuing through approximately
November 2010, in Fayette County, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,
CHRISTINA CARMAN,
YURIY PAK,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire
with each other, and others known and unknown, to knowingly conduct one or more
financial transactions affecting interstate commerce and foreign commerce, knowing that

the property involved in the financial transactions represented the proceeds of a specified

unlawful activity, and which in fact involved the proceeds of Conspiracy to Commit Wire

Fraud as charged in Count 15 of this Indictment in violation of 18 U.S. C. § 1349,

knowing that the transactions were designed in whole or in part to conceal and disguise

the nature, location, source, ownership and control of the proceeds of such specified

unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

2.     Paragraphs 1 through 19 of the Introduction to this Indictment are realleged and

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for the co-conspirators to enrich themselves

by processing check payments related to untaxed cigarette orders for **YURIY PAK** using

a fraudulent payment processing account established by **JOHN MADDUX, JR.,**

**CHRISTINA CARMAN**, and/or G.H.

## MANNER AND MEANS OF THE CONSPIRACY

4.     Financial transactions, including the transmission of payments related to the

selling of untaxed cigarettes through the account identified in Count 15 into bank

accounts utilized by ASR I, Inc./ ESR I, LLC, were designed to conceal and disguise the

nature, location, source, ownership and control of the proceeds of this fraud.  During

2008-2010, total funds deposited into Wells Fargo Bank accounts held by ASR I,

Inc./ESR I, LLC in Pinetop, Arizona, that were derived from this conspiracy was

approximately $700,000.

5.     For example, on July 23, 2010, EFT Network, Inc. electronically transferred from an out of state bank into the account of ASR I, Inc./ESR I, LLC ending in *5887, at the Wells Fargo Bank in Pinetop, Arizona, the amount of $4,707.87.  The subsequent month, on or about August 13, 2010, fees and expenses, including a monthly premium for the prior month's activity, were paid by wire as described, that is, Checkredi, LLC electronically debited the account of YKTR, Inc., ending in *8432, at the PNC Bank in Ashland, Kentucky, the amount of $77.50.  The wire transmission was required to pass through a processing center in Pittsburgh, Pennsylvania for PNC Bank before the money was finally paid to Checkredi, LLC's bank account at the Central Bank and Trust Company located in Lexington, Kentucky.

All in violation of 18 U.S.C. § 1956(h).

## COUNT 17
## 18 U.S.C. § 1956(h)

1.     From on or before October 2008, and continuing through approximately October 2013, in Greenup and Boyd Counties, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,**
**CHRISTINA CARMAN,**
**JULIE COSCIA,**
**ANTHONY COSCIA,**
**YURIY PAK,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire with each other, and others known and unknown, to knowingly transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of a specified

55

unlawful activity, that is, Conspiracy to Commit Wire Fraud as charged in Counts 9 and
15 of this Indictment, in violation of 18 U.S.C. § 1349, in violation of 18 U.S.C.
§ 1956(a)(2)(A).

2.      Paragraphs 1 through 19 of the Introduction to this Indictment are realleged and
incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the co-conspirators to enrich themselves
by electronically transferring commingled funds to overseas accounts to acquire untaxed
cigarettes from **YURIY PAK** and to transfer proceeds related to check processing for
untaxed cigarette orders for **YURIY PAK**.

## MANNER AND MEANS OF THE CONSPIRACY

4.      Deposits related to customer sales were made into accounts into Kentucky
Farmer's Bank in Ashland, Kentucky.  These funds were wired in interstate commerce to
accounts held at Wells Fargo Bank in Pinetop, Arizona. For example,  on or about
December 14, 2012, funds were electronically transferred from the account for ESR II,
Inc. ending *3536, at Kentucky Farmer's Bank in Ashland, Kentucky in the amount of
$50,000 to the account for ASRI, Inc. ending in *0379, at Wells Fargo Bank in Pinetop,
Arizona. The funds were then transferred to another Wells Fargo Bank account and
eventually commingled with funds from co-conspirators to be wired to **YURIY PAK.**

5.      On or about December 14, 2012, commingled funds were electronically
transferred from the account for ASR I, Inc./ESR I, LLC ending in *1352 at the Wells
Fargo Bank in Pinetop, Arizona, in the amount of $27,000 to an account of Cendano

Corporation, at Citadel Bank, in Latvia, consisting of $25,000 of funds from **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H and $2,000 from **JULIE COSCIA** and **ANTHONY COSCIA**.

6.      During the time period alleged, **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H. electronically transferred approximately $900,000 from Wells Fargo accounts held by ASR Funding Inc. and ASR I, Inc./ESR I, LLC in Pinetop, Arizona, which included commingled funds provided by **JOHN MADDUX, JR., CHRISTINA CARMAN, JULIE COSCIA**, and **ANTHONY COSCIA** to overseas accounts owned or controlled by **YURIY PAK**. This amount also included the proceeds related to check processing for cigarette orders for **YURIY PAK** for his own customers.

All in violation of 18 U.S.C. § 1956(h).

### COUNT 18
### 18 U.S.C. § 1956(h)

1.      From on or before January 2013, and continuing through approximately December 2013, in Greenup and Boyd Counties, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,
CHRISTINA CARMAN,
JULIE COSCIA,
ANTHONY COSCIA,
JONATHAN MORGAN,
JACK WEIZMAN,**

and another unindicted co-conspirator identified as G.H. (now deceased), did conspire with each other, and others known and unknown, to knowingly transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of a specified

unlawful activity, that is Conspiracy to Commit Wire Fraud as charged in Count 10 of

this Indictment, in violation of 18 U.S.C. § 1349, all in violation of 18 U.S.C.

§ 1956(a)(2)(A).

2.      Paragraphs 1 through 21 of the Introduction to this Indictment are realleged and

incorporated by reference herein.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for co-conspirators to electronically transfer

commingled funds to overseas accounts to acquire untaxed cigarettes from **JONATHAN

MORGAN** and/or **JACK WEIZMAN**.

## MANNER AND MEANS OF THE CONSPIRACY

4.      Deposits related to customers' sales were made into accounts at Kentucky

Farmer's Bank in Ashland, Kentucky.  These funds were wired in interstate commerce to

accounts held at Wells Fargo Bank in Pinetop, Arizona.  For example, on or about

February 7, 2013, funds were electronically transferred from the account for ESR II, Inc.

ending *3536, at Kentucky Farmer's Bank in Ashland, Kentucky in the amount of

$45,000 to the account for ASR Inc. ending in *0379, at Wells Fargo Bank in Pinetop,

Arizona.  The funds were then transferred to another Wells Fargo Bank account and were

eventually commingled with funds from co-conspirators to be wired to **JONATHAN

MORGAN** and/or **JACK WEIZMAN**.

5.     On February 8, 2013, commingled funds were electronically transferred from the account for ASR, Inc./ESR I ending in *1352, at Wells Fargo Bank in Pinetop, Arizona in the amount of $24,500 to an account of Open World Trading LTD., at Hellenic Bank, in Cyprus, consisting of $20,000 in funds from **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H. and $4,500 from **JULIE COSCIA** and **ANTHONY COSCIA**.

6.     During the time period alleged, **JOHN MADDUX, JR., CHRISTINA CARMAN**, and/or G.H. electronically transferred approximately $1,200,000 from Wells Fargo accounts held by ASR I, Inc./ESR I, LLC in Pinetop, Arizona, which included commingled funds provided by **JOHN MADDUX, JR., CHRISTINA CARMAN, JULIE COSCIA,** and **ANTHONY COSCIA** to overseas accounts owned or controlled by **JONATHAN MORGAN** and/or **JACK WEIZMAN**. The purpose of these electronic transfers was to acquire untaxed cigarettes from **JONATHAN MORGAN** and/or **JACK WEIZMAN.**

All in violation of 18 U.S.C. § 1956(h).

## COUNTS 19-27
### 18 U.S.C. § 1957

1.     From on or about the dates set forth in the summary chart below, in Boyd County, in the Eastern District of Kentucky and elsewhere,

### JOHN MADDUX, JR.

did knowingly engage in monetary transactions in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity, that is Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, more particularly

described in Counts 1and 6 of this Indictment, knowing that the money involved in the

financial transaction represented the proceeds of Wire Fraud, as described below:

| Count | Date | Amount | Check / Wire | Payee | Asset | Source Account |
|-------|------|--------|--------------|-------|-------|----------------|
| 19 | 08/18/2010 | $867,931.52 | Wire | Lawyer's Title of Arizona, Inc. | House - 3588 Cary Court, Pinetop, AZ | PNC Account Ending 0743 for YKTR, Inc. (Ashland, KY) |
| 20 | 07/02/2010 | $67,351.10 | Check 13217 | Al Serra Cadillac/GMC | 2010 Cadillac Escalade / 2010 Cadillac Escalade Ext | PNC Account Ending 8432 for YKTR, Inc. (Ashland, KY) |
| 21 | 11/25/2009 | $58,200.00 | Wire | H&H Performance Inc | 1968 Cougar GTE | NCB Account Ending 4351 for YKTR , Inc.(Ashland, KY) |
| 22 | 02/18/2011 | $25,000.00 | Wire | H&H Performance Inc | 1969 Mustang Boss 429 | PNC Account Ending 0276 for ESR III, LLC (Ashland, KY) |
| 23 | 02/25/2010 | $35,000.00 | Wire | Richard Demetro | 1963 Corvette Split Window | PNC Account Ending 7143 for Christina Carman/John Maddux (Ashland, KY) |
| 24 | 06/22/2010 | $25,000.00 | Wire | Scotty Jue | 1969 Camaro Z28 | PNC Account Ending 9471 for Christina Carman/John Maddux (Ashland, KY) |

| 25 | 08/26/2010 | $150,000.00 | Wire | Scottrade Inc | Joint Individual Brokerage Account Ending 1449 | PNC Account Ending 7143 for Christina Carman/John Maddux (Ashland, KY) |
|----|------------|-------------|------|---------------|-------------------------------------------------|------------------------------------------------------------------------|
| 26 | 02/24/2011 | $100,000.00 | Wire | Scottrade Inc | Joint Individual Brokerage Account Ending 1449 | PNC Account Ending 7143 for Christina Carman/John Maddux (Ashland, KY) |
| 27 | 04/06/2011 | $200,000.00 | Wire | Scottrade Inc | Joint Individual Brokerage Account Ending 1449 | PNC Account Ending 7143 for Christina Carman/John Maddux (Ashland, KY) |

Each Count in violation of 18 U.S.C. § 1957.

## COUNT 28
### 18 U.S.C. § 371

1.    From on or before 2008, and continuing through approximately December 2013, in Greenup County, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,**
**CHRISTINA CARMAN,**
**MIKHAIL SEROV,**
**ALEXANDER SERGEEV,**

and another unindicted co-conspirator identified as G.H. (now deceased), did knowingly conspire with each other and others known and unknown to commit the following offenses against the United States, that is, to:

61

a) knowingly offer cigarettes for sale in interstate commerce or sell cigarettes in interstate commerce without filing with the Attorney General of the United States and with the tobacco tax administrators of the States into which cigarettes were sold, a statement including the name, trade name (if any), the principal place of business, a principal electronic address, and the name, address, and telephone number of an agent in the state authorized to accept service on behalf of the person, in violation of 15 U.S.C. § 376(a)(1);

b) knowingly sell, transfer, or caused to be shipped cigarettes into states, without filing a memorandum or invoice not later than the 10th day of each calendar month covering each and every shipment of cigarettes made during the previous calendar month into such state including the name and address of the person to whom the shipment was made, the brand, the quantity thereof, and the name, address and phone number of the person delivering the shipment to the recipient on behalf of the delivery seller, with all invoice or memoranda information relating to the specific customers organized by city or town and by zip code, in violation of 15 U.S.C. § 376(a)(2);

c) knowingly make delivery sales of cigarettes into the States of Indiana and New York and failed to comply with laws imposing excise taxes and tax stamping requirements in violation of 15 U.S.C. § 376a(a)(3)(A) and (B).

d) knowingly cause non-mailable cigarettes to be deposited and delivered in the United States mail according to the direction thereon, in violation of 18 U.S.C. § 1716E.

62

## OBJECT

2.  The purpose of the conspiracy was to sell untaxed cigarettes into states without complying with reporting requirements so the co-conspirators could profit from selling untaxed cigarettes at reduced prices.

## MANNER AND MEANS

3.  Paragraphs 2 through 19 of Count 6 are realleged and incorporated by reference herein.

## OVERT ACTS

4.  In furtherance of the conspiracy and to effect the objects thereof, there was committed by at least one co-conspirator, or an employee acting on their behalf, a sale of untaxed cigarettes to an undercover agent who contacted the call center at ESR II, Inc. d/b/a AR Trade, in Russell, Kentucky, to order cigarettes which resulted in the delivery of untaxed cigarettes as described in the summary chart below, without reporting compliance and in violation of the prohibition on mailing cigarettes:

| Date of Order | Cigarette Brand | Source of Cigarettes | Undercover Agent's Alias Name and Location Cigarettes Mailed |
|---|---|---|---|
| August 25, 2010 | Marlboro Reds | Ukraine | Jason Bradley/ New York |
| September 15, 2010 | Marlboro Lights/ Next Lights | Ukraine | Drew Alexander/ Indiana |
| April 26, 2011 | Marlboro Lights | Ukraine | Jason Bradley/ New York |
| May 3, 2011 | Marlboro Lights/ Next Lights | Ukraine | Drew Alexander/ Indiana |
| March 5, 2012 | Marlboro Lights/ Bond/ Winston Lights | Moldova | Drew Alexander/ Indiana |

In violation of 15 U.S.C § 376(a)(1) and (a)(2), 15 U.S.C. § 376a(a)(3)(A) and

(B), and 18 U.S.C. § 1716E, all in violation of 18 U.S.C. § 371.

## COUNT 29
## 18 U.S.C. § 371

1.    From on or before October 2010, and continuing through approximately January

2013, in Greenup County, in the Eastern District of Kentucky and elsewhere,

### JOHN MADDUX, JR.,
### CHRISTINA CARMAN,
### YURIY PAK,

and another unindicted co-conspirator identified as G.H. (now deceased), did knowingly

conspire with each other and others known and unknown to commit the following

offenses against the United States, that is, to:

a)  knowingly offer cigarettes for sale in interstate commerce or sell cigarettes in

interstate commerce without filing with the Attorney General of the United States and

with the tobacco tax administrators of the States into which cigarettes were sold, a

statement including the name, trade name (if any), the principal place of business, a

principal electronic address, and the name, address, and telephone number of an agent in

the state authorized to accept service on behalf of the person, in violation of 15 U.S.C.

§ 376(a)(1);

b) knowingly sell, transfer, or cause to be shipped cigarettes into states, without

filing a memorandum or invoice not later than the 10th day of each calendar month

covering each and every shipment of cigarettes made during the previous calendar month

into such state including the name and address of the person to whom the shipment was

made, the brand, the quantity thereof, and the name, address and phone number of the

person delivering the shipment to the recipient on behalf of the delivery seller, with all

invoice or memoranda information relating to the specific customers organized by city or

town and by zip code, in violation of 15 U.S.C. § 376(a)(2);

c) knowingly make delivery sales of cigarettes into the States of Indiana and New

York and failed to comply with laws imposing excise taxes and tax stamping

requirements in violation of 15 U.S.C. § 376a(a)(3)(A) and (B).

d) knowingly cause non-mailable cigarettes to be deposited and delivered in the

United States mail according to the direction thereon, in violation of 18 U.S.C. § 1716E.

## OBJECT

2.    The purpose of the conspiracy was to sell untaxed cigarettes into states without

complying with reporting requirements so the co-conspirators could profit from selling

untaxed cigarettes at reduced prices.

## MANNER AND MEANS

3.    Paragraphs 2 through 15 of Count 9 are realleged and incorporated by reference

herein.

## OVERT ACTS

4.    In furtherance of the conspiracy and to effect the objects thereof, there was

committed by at least one co-conspirator, or an employee acting on their behalf, a sale of

untaxed cigarettes to an undercover agent who contacted the call center at ESR II, Inc.

d/b/a AR Trade, in Russell, Kentucky, to order cigarettes which resulted in the delivery

of untaxed cigarettes as described in the summary chart below, without reporting

compliance and in violation of the prohibition on mailing cigarettes:

| Date of Order | Cigarette Brand | Source of Cigarettes | Undercover Agent's Alias Name and Location Cigarettes Mailed |
|---|---|---|---|
| November 21, 2012 | Marlboro Reds | Kyrgyzstan | Drew Alexander/ Indiana |
| November 30, 2012 | Marlboro Reds | Kyrgyzstan | Jason Bradley/ New York |

In violation of 15 U.S.C. § 376(a)(1) and (a)(2), 15 U.S.C. § 376a(a)(3)(A) and

(B), and 18 U.S.C. § 1716E, all in violation of 18 U.S.C. § 371.

### COUNT 30
**18 U.S.C. § 371**

1.      From on or before December 2012, and continuing through approximately

December 2013, in Greenup County, in the Eastern District of Kentucky and elsewhere,

**JOHN MADDUX, JR.,**
**CHRISTINA CARMAN,**
**JONATHAN MORGAN,**
**JACK WEIZMAN,**

and another unindicted co-conspirator identified as G.H. (now deceased), did knowingly

conspire with each other and others known and unknown to commit the following

offenses against the United States, that is, to:

a) knowingly offer cigarettes for sale in interstate commerce or sell cigarettes in

interstate commerce without filing with the Attorney General of the United States and

with the tobacco tax administrators of the States into which cigarettes were sold, a

statement including the name, trade name (if any), the principal place of business, a

principal electronic address, and the name, address, and telephone number of an agent in

66

the state authorized to accept service on behalf of the person, in violation of 15 U.S.C.
§ 376(a)(1);

b) knowingly sell, transfer, or cause to be shipped cigarettes into states, without
filing a memorandum or invoice not later than the 10th day of each calendar month
covering each and every shipment of cigarettes made during the previous calendar month
into such state including the name and address of the person to whom the shipment was
made, the brand, the quantity thereof, and the name, address and phone number of the
person delivering the shipment to the recipient on behalf of the delivery seller, with all
invoice or memoranda information relating to the specific customers organized by city or
town and by zip code, in violation of 15 U.S.C. § 376(a)(2);

c) knowingly make delivery sales of cigarettes into the States of Indiana and New
York and failed to comply with laws imposing excise taxes and tax stamping
requirements in violation of 15 U.S.C. § 376a(a)(3)(A) and (B).

d) knowingly cause non-mailable cigarettes to be deposited and delivered in the
United States mail according to the direction thereon, in violation of 18 U.S.C. § 1716E.

### OBJECT

2.      The purpose of the conspiracy was to sell untaxed cigarettes into states without
complying with reporting requirements so the co-conspirators could profit from selling
untaxed cigarettes at reduced prices.

### MANNER AND MEANS

3.      Paragraphs 2 through 17 of Count 10 are realleged and incorporated by reference
herein.

## OVERT ACTS

4.     In furtherance of the conspiracy and to effect the objects thereof, there was

committed by at least one co-conspirator, or an employee acting on their behalf, a sale of

untaxed cigarettes to an undercover agent who contacted the call center at ESR II, Inc.

d/b/a AR Trade, in Russell, Kentucky, to order cigarettes which resulted in the delivery

of untaxed cigarettes as described in the summary chart below, without reporting

compliance and in violation of the prohibition on mailing cigarettes:

| Date of Order | Cigarette Brand | Source of Cigarettes | Undercover Agent's Alias Name and Location Cigarettes Mailed |
|---|---|---|---|
| March 7, 2013 | Marlboro Reds | Israel | Drew Alexander/ Indiana |
| March 25, 2013 | Newport Box Menthol King | Israel | Jason Bradley/ New York |
| May 8, 2013 | Camel | Israel | Paul Collins/ Kentucky |

In violation of 15 U.S.C § 376(a)(1) and (a)(2), 15 U.S.C. § 376a(a)(3)(A) and

(B), and 18 U.S.C. § 1716E, all in violation of 18 U.S.C. § 371.

### COUNTS 31-34
### 18 U.S.C. § 1001

1.     On or about the dates set forth in the summary chart below, in Laurel County, in

the Eastern District of Kentucky and elsewhere,

### JOHN MADDUX, JR.,

in a matter within the jurisdiction of the United States Department of Labor (DOL), an

agency within the executive branch of the United States, did knowingly and willfully

make and cause to be made a materially false, fictitious and fraudulent statement and

representation, knowing such statement and representation to be false, fictitious and fraudulent, by executing and submitting to the DOL Office of Workers' Compensation Programs located in London, Laurel County, Kentucky, a Form EN-1032, upon which he falsely stated that he had not been self-employed or involved in any business enterprise in the past fifteen months prior to the date each statement was signed. The statement and representation were false because, as **JOHN MADDUX, JR.**, then and there well knew he was self-employed or involved in a business enterprise in the past fifteen months prior to the date each statement was signed:

| COUNT | DATE |
|-------|------|
| 31 | September 30, 2010 |
| 32 | November 25, 2011 |
| 33 | October 1, 2012 |
| 34 | September 11, 2013 |

Each in violation of 18 U.S.C. § 1001.

### FORFEITURE ALLEGATIONS
**18 U.S.C. § 981(a)(1)(C)**
**28 U.S.C. § 2461(c)**
**18 U.S.C. § 982(a)(1)**

In committing the felony offenses alleged in this indictment, each punishable by imprisonment for more than one year,

**JOHN W. MADDUX, JR.,**
**CHRISTINA CARMAN,**
**BARBARA JEAN ROUTH,**
**aka BONNIE ROUTH,**
**JULIE COSCIA,**
**ANTHONY COSCIA,**

**DAVID H. WHITE,**
**MICHAEL E. SMITH,**
**MIKHAIL SEROV,**
**ALEXANDER SERGEEV,**
**YURIY PAK,**
**JONATHAN MORGAN, and**
**JACK WEIZMAN**

shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.

§ 2461(c), any property, real or personal, which constitutes or is derived from proceeds

traceable to the violations of 18 U.S.C. §§ 371, 1341, 1343, and 1349 as alleged in

Counts 1, 3, 4, 5, 6, 9, 10, 12, 15, 28, 29, and 30, and pursuant to 18 U.S.C. § 982(a)(1),

shall forfeit any property, real or personal, involved in or which facilitated a violation of

18 U.S.C. §§ 1956 and 1957 as alleged in Counts 2, 7, 8, 11, 13, 14, and 16 through 27,

including but not limited to the following:

### MONEY JUDGMENT:

An amount representing the approximate gross proceeds, up to at least

$45,000,000.00, derived from the conspiracies, schemes to defraud and money

laundering and for which the defendants are jointly and severally liable.

### REAL PROPERTY:

a. 314 Ferry Street, Russell, Kentucky.

TRACT I: BEING that certain lot lying on the North side of Ferry Street, In Russell, Kentucky, conveyed party of the first part (J.E. Lynd) by Lester Lynd and Margaret Lynd on May 4, 1928, by Deed recorded in Deed Book No. 70, Page 466, Greenup County Records; BEGINNING at a point in Ferry Street, corner to the Town House Lot, occupied (City Building); thence on a line twenty-five (25) feet to a point in Ferry Street corner to other land owned by Nuna Stephens; thence on a line of same One Hundred Twenty (120) feet to an alley; thence on line of same Twenty-five (25) feet to the City Building; thence on a line One Hundred Twenty (120) feet to Ferry Street, the place of beginning.

Being the same property conveyed to John Maddux by Deed dated January 18, 2006, of record in Deed Book 535, Page 170, in the office of the Greenup County Clerk.

    b. <u>112 Bellefonte Drive, Ashland, Kentucky</u>.

Situated in Greenup County, Kentucky, and being a part of Lot No. 13, Block No. 2, Means and Russell Iron Company's Bellefonte Subdivision, as recorded in Plat Book 2, Page 101, in the Office of the Clerk of the Greenup County Court of Kentucky, being more particularly described as follows:

Beginning at a point in the southerly line of Bellefonte Drive, the northeasterly corner of the portion of Lot No. 13 deeded by Giuseppe A. Muccini and Vincenzina Muccini to Robert Stanley Knox and Lois Haskins Knox by deed dated August 27, 1980, as recorded in Deed Book 323, P. 434; thence running through said Lot No. 13 S 4° 16W 159.8 feet to a point on Lot No. 4 being the same southeasterly point of the portion of said Lot No. 13 deeded to the Knoxes by the aforesaid deed dated August 27, 1980; thence with the northerly line of Lot 4, S 79° - 17' E, a distance of 83.18 feet to a concrete monument, corner of Lots 3, 4 and 14, Block 2; thence with the line of Lot 14 N 4° - 16' E, a distance of 190.18 feet to a concrete monument in the south line of Bellefonte Drive; thence with the southerly line of Bellefonte Drive westerly on a curve to the right a distance of 85.34 feet to the point of beginning, as shown on attached plat.

The foregoing real estate in conveyed subject to all covenants, easements restrictions and reservations previously imposed and appearing of record, and further subject to an and all right, title and interest granted and conveyed by Guiseppe A. Muccini and Robert Stanley Knox and Lois Knox by deed dated August 27, 1980 and recorded in Deed Book 323, Page 434, Greenup County Clerk's records.

TOGETHER with all tenements, hereditaments, and appurtenances, with every privilege, right, title, interest and estate, reversion, remainder and easement thereunto belonging or in any way appertaining.

Being the same property conveyed to Christina Carman by Deed dated April 25, 2008, of record in Deed Book 547, Page 601, in the office of the Greenup County Clerk.

    c. <u>3637 Deep Forest Drive, Pinetop, Arizona</u>.

LOT 37, of Pinetop Lakes Country Club Unit One, according to the plat of record in the office of the county recorder of Navajo County, Arizona, recorded in Book 11 of Plats, Page 14.

Subject to: Existing taxes, assessments, liens, encumbrances, covenants, conditions, restrictions, rights of way and easements of record.

Being the same property conveyed to Glenn E. Herndon and Judith A. Thieben by Warranty Deed dated April 5, 2006, Document Identifier: 2006-14504, of record in the

office of the county recorder of Navajo County, Arizona. Glen E. Herndon conveyed his interest to The Glenn E. Herndon Family Living Trust by Special Warranty Deed dated September 12, 2006, Document Identifier: 2006-28541. Judith A. Thieben conveyed her interest to The Judith Ann Thieben Family Living Trust by Special Warranty Deed dated September 12, 2006, Document Identifier: 2006-28542.

      d. <u>3769 Deep Forest Drive, Pinetop, Arizona</u>.

Lot 43, Pinetop Lakes Country Club Unit One, according to Book 11 of Plats, Page 14, records of Navajo County, Arizona. \*\*and amended and restate under Agreement date November 6, 2006.

Subject to: Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record.

Being the same property conveyed to Glenn E. Herndon and Judith Thieben by Warranty Deed dated May 4, 2010, Document Identifier: 2010-07630, of record in the office of the county recorder of Navajo County, Arizona. Glenn E. Herndon and Judith Thieben executed Quit Claim Deed dated August 19, 2010 to Judith Ann Thieben as Trustee, or her successors in trust, under the Judith Ann Thieben Family Living Trust, Document Identifier: 2010-13695. Warranty Deed dated November 20, 2012 conveyed the property to Judith A. Thieben, Document Identifier: 2012-20044.

      e. <u>3548 & 3588 Cary Court, Pinetop, Arizona</u>.

That part of Tract C, Pinetop Country Club Unit 1, according to Book 8 of Plats, page 46, records of Navajo County, Arizona, being described as Parcels 1, 2 and 5, Section 2, Township 8 North, Range 23 East, according to Book 43 of Land Surveys, pages 20 and 21, records of Navajo County, Arizona;

EXCEPT all minerals as reserved in Patent from United States of America.

Subject to: Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record.

Being the same property conveyed to Judith A. Thieben and John W. Maddux by Joint Tenancy Deed dated November 20, 2012, Document Identifier: 2012-20043, of record in the office of the county recorder of Navajo County, Arizona.

### **VEHICLES/CONVEYANCES:**

Seized from Judith Thieben, Pinetop, AZ:

      a. 2010 Cadillac Escalade Ext passenger VIN: 3GYVKMEFXAG202940

b. 2010 Cadillac Escalade passenger VIN: 1GYUKBEF6AR169354

c. 2005 Lincoln Aviator Passenger VIN: 5LMEU88H45ZJ11343

Seized from Tim Fraley, Ashland, KY:

d. 1966 Ford Mustang GT Passenger VIN: 6T08A109935

e. 1970 Plymouth Barracuda Hemi Passenger VIN: B23R0B201144

f. 1971 Chevrolet Corvette LS6 Passenger VIN: 194371S113930

Seized from Glenn Herndon, Pinetop, AZ:

g. 2008 Skeeter 21i Bass Boat fishing boat VIN: STE17322G708

h. 2008 Boat Trailer Hull No: 1L8FAHPG08A049017

i. 2007 Fisher Avenger boat Hull No: BUJ63975B707

j. 2007 Boat Trailer VIN: 4TM12KB137B001141

Seized from John Maddux, Jr., Ashland, KY:

k. 2003 Hummer H2 SUV VIN: 5GRGN23U33H119918

l. 1969 Chevrolet Camaro RS Passenger VIN: 124379N648279

m. 1969 Ford Mustang Shelby VIN: 9FO2R480124

n. 1969 Ford Mustang Mach 1 VIN: 9F02R191418

o. 1974 Detomaso Pantera GTS VIN: THPNMS04914

p. 1966 Mercury Parklane VIN: 6Z68M542942

q. 1959 Ford Fairlane VIN: B9KC117098

r. 1966 Chevrolet Corvette VIN: 194376S127144

s. 1970 Dodge Challenger VIN: JS23V0B150828

Seized from John Maddux, Jr., Pinetop, AZ:

t. 2010 Chevrolet Corvette ZR1 passenger VIN: 1G1YN2DT3A5800230

u. 2012 Polaris Ranger Razor 4 ATV VIN: 4XAXT9EA4CB588528

v. 2007 Interstate Kingman Plant I10218TA2 Trailer VIN:
4RACS18277K019207

Seized from Charles Nichols, Russell, KY:

w. 1970 Chevrolet Camaro RS VIN: 124870N506118

x. 1971 Plymouth Cuda 440 VIN: B523V1B287144

73

Seized from Ryan Horchen, Dubois, PA:

    y.  1968 Mercury Cougar GTE VIN: 8F93W567083

Seized from John Maddux, Jr., Gordonville, MO:

    z.  1971 Ford Boss 351 Mustang VIN: 1F02R136013

### CURRENCY:

Seized from Judith Thieben, Pinetop, AZ:

    a.  $160,200.00 in United States currency
    b.  $5,250.00  in United States currency
    c.  $10,090.00 in United States Currency

### MISCELLANEOUS:

Seized from John Maddux, Jr., Pinetop, AZ:

    a.  Sports Memorabilia
    b.  Collectible Coins
    c.  Jewelry: Precious Items (2 items)

Seized from Judith Thieben, Pinetop, AZ:

    d.  Collectible Coins
    e.  Jewelry: Precious Items (18 items)
    f.  Sports Memorabilia

Seized from Julie Coscia, Pinetop, AZ:

    g.  Los Angeles Rams vintage leather football with stamped signatures of the entire team

### BANK ACCOUNTS:

Seized in Ashland, KY:

    a.  $56,517.66 seized from ESR II Inc., Kentucky Farmers Bank Acct xxx3536
    b.  $3,173.77 seized from ESR II Inc., Kentucky Farmers Bank Acct xxx3544

74

c. $28,828.04 seized from ESR II Inc., Kentucky Farmers Bank Acct xxx3560

d. $1,000.00 seized from ESR II Inc., Kentucky Farmers Bank Acct xxx3552

e. $108,473.52 seized from John Maddux, Jr. & Christina Carman, Kentucky Farmers Bank Account xxx7527

f. $162,435.81 seized from John Maddux, Jr. & Christina Carman Kentucky Farmers Bank CD # xxx8712

g. $207,614.17 seized from John Maddux, Jr. & Christina Carman, Kentucky Farmers Bank CD # xxx9387

h. $1,000.00 seized from John Maddux, Kentucky Farmers Bank Acct xxx3528

Seized in Phoenix, AZ:

i. $1,010.00 seized from ASR Inc., Wells Fargo Bank Acct xxx1352

j. $8,141.39 seized from ASR Inc., Wells Fargo Bank Acct xxx2539

k. $2,011.88 seized from ASR Inc. Funding % KSR, Wells Fargo Bank Acct xxx0379

l. $311,082.94 seized from John Maddux, Jr. Wells Fargo Acct xxx5952

m. $75,898.71 seized from Judith Thieben & John Maddux, Jr. Wells Fargo Acct xxx7378

n. $33,662.92 seized from Glenn Herndon, Wells Fargo Acct xxx2083

o. Approximately $354,070 seized from John Maddux, Jr and Christina Carman, Edward Jones Acct xxx0119

p. Approximately $382,875 seized from Glenn Herndon and John Maddux, Jr, Edward Jones Acct xxx5415

q. Approximately $239,614 seized from Glenn Herndon and John Maddux, Jr, Edward Jones Acct xxx5514

r. Approximately $147,881 seized from Judith Thieben, Edward Jones Acct xxx5316

s. Approximately $99,804 seized from Judith Thieben, Edward Jones Acct xxx6413

Seized in Cleveland, OH:

t. $4,065.96 seized from John W. Maddux, Jr , PNC Bank CD #xxx2978

**FIREARMS:**

Seized from John Maddux, Jr., Pinetop, AZ:

1. Savage 24 F Combination Rifle/Shotgun CAL:22-20 SN:F110178

2. Savage 7 Rifle CAL:22 SN:2094577

3.  Remington Arms Company, Inc. 760 Rifle CAL:30-06 SN:B6995949
4.  Rossi G22 Rifle CAL:22 SN:G639530
5.  Weatherby Mark V Rifle CAL:224 SN:S7272
6.  Spanish Military Unknown Rifle CAL:762 SN:ER703421
7.  Parker-Hale Safari Rifle CAL:30-06 SN:A363
8.  Winchester 12 Shotgun CAL:12 SN:624618
9.  Sodia, Franz Unknown Shotgun CAL:Unknown SN:180139
10. Boito/ER Amantino/IGA Condor I Shotgun CAL:12 SN:147219-06
11. Unknown Mfg Unknown Rifle CAL:44 SN:K25547
12. Winchester 25 Shotgun CAL:12 SN:27766
13. Norinco (North China Industries) SKS Rifle CAL:762 SN:10427598
14. Mossberg 500 Shotgun CAL:12 SN:R393307
15. Remington Arms Company, Inc 700 Rifle CAL:30-06 SN:C6538831
16. Chinese SKS Rifle CAL:762 SN:14235515
17. Mossberg 500 ATP Shotgun CAL:12 SN:H664557
18. Weatherby Mark V Rifle CAL:300 SN:43712
19. Olympic Arms Inc (SGW Enterprises & Safari Arms) MFR Rifle CAL:223 SN:JF2685
20. Weatherby Vanguard Rifle CAL:300 SN:VS80506
21. Colt Match Target Rifle CAL:223 SN:CMH005577
22. Golden State Arms Unknown Rifle CAL:Unknown SN:None
23. Savage 99E Rifle CAL:300 SN:A343825
24. Browning Bar Rifle CAL:7 SN:137PR26493
25. Remington Arms Company, Inc. 700 Rifle CAL:22-250 SN:E6613145
26. Hesse Ltd HAR-15A2 Rifle CAL:223 SN:002256
27. Savage 24 Series P Combination Gun CAL:22/20 SN:C229727
28. Norinco (North China Industries) SKS Rifle CAL:762 SN:1204725
29. Remington Arms Company, Inc. 12 Shotgun CAL:12 SN:721595
30. Ruger 10/22 Rifle CAL:22 SN:250-66372
31. Remington Arms Company, Inc. 1100 Shotgun CAL:12 SN:M308846V
32. Remington Arms Company, Inc. 1100 Shotgun CAL:20 SN:120013X
33. F.N. (FN Herstal) Acier Special Shotgun CAL:12 SN:28017
34. Remington Arms Company, Inc. 700 Rifle CAL:30-06 SN:T6203699
35. Ruger Mini 14 Rifle CAL:223 SN:183-22957
36. Norinco (North China Industries) NHM91 Rifle CAL:762    SN:9214624
37. Norinco (North China Industries) SKS Rifle CAL:762 SN:1702871

38.   Ithaca Gun Co. 37 Shotgun CAL:12 SN:691913-4
39.   Norinco (North China Industries) SKS Rifle CAL:762 SN:18004446
40.   Remington Arms Company, Inc. 760 Rifle CAL:270 SN:514426
41.   Franz Sodia Ferlach Bahler Blitz Shotgun CAL:Unknown SN:1567.33
42.   Parker-Hale Unknown Rifle CAL:270 SN:P-77115
43.   Browning Light 12 Shotgun CAL:12 SN:50125
44.   Henry Repeating Rifle Company Unknown Rifle CAL:22
      SN:GB120260
45.   Maroccini The Sturdy Shotgun CAL:20 SN:96756
46.   Prandelli-Gaspfrini Gardone ACCIAIO Speciale Shotgun CAL:410
      SN:10829
47.   Ruger Unknown Shotgun CAL:20 SN:400-61796
48.   Winchester 9422 Rifle CAL:22 SN:F696230
49.   ROMARM/CUGIR GP WASR 10/63 Rifle CAL:762 SN:BC0488
50.   Olympic Arms Inc. (SGW Enterprises & Safari Arms) AR-15 Rifle
      CAL:223 SN:BT2240
51.   Browning Sweet 16 Shotgun CAL:16 SN:A102
52.   Winchester 97 Shotgun CAL:12 SN:986894
53.   Remington Arms Company, Inc. Woodsmaster 742 Rifle CAL:30-06
      SN:389187
54.   Colt Match Target HBAR Rifle CAL:223 SN:CCH005597
55.   Remington Arms Company, Inc. 870 Express Super MG Rifle
      CAL:12 SN:D941533A
56.   Browning Unknown Shotgun CAL:12 SN:469029
57.   Remington Arms Company, Inc. 1100 Shotgun CAL:12
      SN:L966210V
58.   Winchester 97 Shotgun CAL:12 SN:970343
59.   Norinco (North China Industries) SKS Rifle CAL:762 SN:230037
60.   Winchester 1912 Shotgun CAL:12 SN:660286
61.   Savage Unknown Shotgun CAL:20 SN:B561762
62.   Winchester 9422 Rifle CAL:22 SN:F760144
63.   Remington Arms Company, Inc. Unknown Rifle CAL:Unknown
      SN:4116673
64.   Knight Rifle (Modern Muzzleloading) Wolverine 209 Rifle CAL:50
      SN:816094
65.   France Unknown Rifle CAL:Unknown SN:63807
66.   Unknown Unknown Rifle CAL:Unknown SN:62914
67.   Marlin Firearms Co. 1895G Rifle CAL:45-70 SN:00013500

68. Marlin Firearms Co. 30AS Rifle CAL:30-30 SN:04093519
69. Winchester 9422 Shotgun CAL:22 SN:F565193
70. Norinco (North China Industries) SKSS Rifle CAL:762 SN:9209528
71. Winchester Unknown Shotgun CAL:Unknown SN:339359
72. Ruger 10/22 Rifle CAL:22 SN:251-67315
73. Yugoslavia 59/66 Rifle CAL:762 SN:0-580534
74. Savage Unknown Rifle CAL:Unknown SN:224666
75. Norinco (North China Industries) Unknown Rifle CAL:zz SN:23001260
76. Unknown Unknown Shotgun CAL:Unknown SN:None
77. Savage 87A Rifle CAL:22 SN:None
78. Unknown Unknown Rifle CAL:Unknown SN:None
79. Unknown Unknown Shotgun CAL:Unknown SN:None
80. Unknown Unknown Shotgun CAL:Unknown SN:None
81. Henry Repeating Rifle Company Unknown Rifle CAL:22 SN:GB197507
82. Smith & Wesson 6906 Pistol CAL:9 SN:TCD8824
83. Marlin Firearms Co. 1893 Rifle CAL:32-40 SN:380729
84. Antique Firearm/ US Springfield 1886, 364074
85. Antique Firearm/ Damas Tohchen/ Double Barrel Shotgun
86. Antique Firearm/ P. Ebert & Sohne Cin Suhl/ Double Barrel Shotgun
87. Antique Firearm/ Parker Double Barrel Shotgun
88. Antique Firearm/ Sharps Oct 5th 1852/ Sharps Rifle Manufg. Co Hartford Conn/ New Model 1863
89. Double Star Corp Star 15 Rifle CAL:556 SN:DS17680

Seized from Judith Thieben, Pinetop, AZ:

90. Winchester 70 Rifle CAL:270 SN:338706
91. Sako L61R Finnbear Rifle CAL:338 SN:517
92. Remington Arms Company Inc. 722 Rifle CAL:222 SN:381603
93. Ruger 10/22 Rifle CAL:22 SN:241-38468
94. Israel Weapon IND-IWI (Israel Military IND-IMI) Desert Eagle Rifle CAL:44 SN:38203239
95. Weatherby Mark V Rifle CAL:300 SN:H135094
96. Barrett Firearms MFG CO 82A1 Rifle CAL:50 BMG SN:24716
97. Unknown Unknown Revolver CAL:Unknown SN:NONE
98. Briley Manufacturing Inc Pistol CAL:Unknown SN:3509
99. Chiappa Firearms Ltd Double Eagle Derringer CAL:22 SN:E00763

100. Colt Pistol CAL:32 SN:422150
101. Smith & Wesson Unknown Revolver CAL:38 SN:105716
102. Thames Arms Company (Thayer, Robinson & Cary) Unknown
     Revolver CAL:Unknown SN:61006
103. Smith & Wesson Unknown Revolver CAL:9 SN:242565
104. Mauser Unknown Pistol CAL:765 SN:382953
105. Colt Unknown Pistol CAL:45 SN:1161531
106. Smith & Wesson Unknown Revolver CAL:10 SN:271140
107. Colt MK IV Mustang Pistol CAL:380 SN:MS18630
108. Colt Python Revolver CAL:38 SN:LA4561
109. Smith & Wesson Unknown Revolver CAL:32-20 SN:138290
110. Colt Police Positive Revolver CAL:38 SN:323880
111. Ruger Mark III Pistol CAL:22 SN:270-32739
112. Colt Police Positive Revolver CAL:38 SN:882341
113. Germany P38 Pistol CAL:9 SN:8685D
114. Walther PPK Pistol CAL:Unknown SN:326088K
115. Beretta Pietro S.P.A. 92F Pistol CAL:9 SN:D94324Z
116. Iver Johnson 1900 Revolver CAL:22 SN:54808
117. Smith & Wesson 41 Pistol CAL:22 SN:TBY1279
118. Colt Cobra Revolver CAL:38 SN:220940
119. Ruger Vaquero Revolver CAL:44 SN:58-73340
120. Germany P38 Pistol CAL:38 SN:2477B
121. Smith & Wesson Unknown Revolver CAL:Unknown SN:523055
122. Egypt Unknown Pistol CAL:Unknown SN:A61460
123. Kimber Classic Gold Match Pistol CAL:45 SN:K032145
124. Colt Police Positive Revolver CAL:38 SN:434304
125. Steyr SPP Pistol CAL:9 SN:57891P
126. Hopkins and Allen XL Revolver CAL:38 SN:1198
127. Sig-Sauer P229 Pistol CAL:40 SN:AL40048
128. Springfield Armory, Geneseo, IL Unknown Pistol CAL:Unknown
     SN:US250103
129. Colt Python Revolver CAL:357 SN:K55847
130. Colt Police Positive Spec Revolver CAL:38 SN:835765
131. Colt Police Positive Revolver CAL:38 SN:18357
132. Colt Police Positive Revolver CAL:38 SN:456829
133. Sig-Sauer Unknown Pistol CAL:9 SN:SP0143621
134. Titan Mfg. Corp. Titan Pistol CAL:25 SN:ED97034
135. Colt Unknown Pistol CAL:25 SN:366224

136.   Germany Unknown Pistol CAL:30 SN:117276
137.   Colt Frontier Six Shooter Revolver CAL:44-40 SN:177813
138.   Colt Unknown Revolver CAL:45 SN:71217
139.   Smith & Wesson 4506 Pistol CAL:45 SN:TCN9137
140.   Ruger LC380 Pistol CAL:380 SN:371047140
141.   Colt Python Revolver CAL:357 SN:34746
142.   Colt Challenger Pistol CAL:22 SN:51670-C
143.   Colt Police Positive Revolver CAL:32 SN:18487
144.   Unknown Unknown Revolver CAL:Unknown SN:4424
145.   Smith & Wesson Unknown Revolver CAL:357 SN:BAP6161
146.   Smith & Wesson 29 Revolver CAL:44 SN:AJA7585

**SUBSTITUTE ASSETS:**

If any of the property listed above, as a result of any act or omission of the

defendants,

a)   cannot be located upon the exercise of due diligence;

b)   has been transferred or sold to, or deposited with, a third party;

c)   has been placed beyond the jurisdiction of the Court;

d)   has been substantially diminished in value; or

e)   has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States to seek the forfeiture of any other property in which

the above defendants have an interest in, up to the value of the currency described above

and pursuant to 21 U.S.C. § 853(p), as incorporated in 28 U.S.C. § 2461(c).

**KERRY B. HARVEY**
**UNITED STATES ATTORNEY**

81

## PENALTIES

**COUNTS 1, 3-6, 9-10, 12, & 15:**
> Not more than 20 years imprisonment, $250,000 fine, and not more than 3 years supervised release.

**COUNTS 2, 7-8, 11, 13-14, & 16-18:**
> Not more than 20 years imprisonment, a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, and not more than 3 years supervised release.

**COUNTS 19-27:**
> Not more than 10 years imprisonment, $250,000 fine, and not more than 3 years supervised release.

**COUNTS 28-30:**

### 18/371 CONSPIRACY TO COMMIT

15 U.S.C. § 376(a)(1)
> Not more than 5 years imprisonment, $250,000 fine, and not more than 3years supervised release.

15 U.S.C. § 376(a)(2)
> Not more than 5 years imprisonment, $250,000 fine, and not more than 3years supervised release.

15 U.S.C. § 376a(a)(3) (A) and (B).
> Not more than 5 years imprisonment, $100,000 fine, and not more than 3years supervised release.

18 U.S.C. § 1716E
> Not more than 1 year imprisonment, $100,000 fine, and not more than 1year supervised release.

**COUNTS 31-34:**
> Not more than 5 years imprisonment, $250,000 fine, and not more than 3 years supervised release.

**PLUS:**   Mandatory special assessment of $100 per felony count and $25 per misdemeanor count.

**PLUS:**   Forfeiture.

**PLUS:**   Restitution, if applicable.

COUNTS IN WHICH EACH DEFENDANT IS CHARGED:

**JOHN MADDUX, JR.:**          1-34

**CHRISTINA CARMAN:**          1-18, 28, 29, 30

**BARBARA JEAN ROUTH:**          1, 2, 5, 6, 7, 9, 10, 11

**JULIE COSCIA:**          3, 6, 9, 10, 14, 17, 18

**ANTHONY COSCIA:**          3, 6, 9, 10, 14, 17, 18

**DAVID H. WHITE:**          4, 10

**MICHAEL E. SMITH:**          5, 6, 14

**MIKHAIL SEROV:**          6, 8, 12, 13, 14, 28

**ALEXANDER SERGEEV:**          6, 8, 12, 13, 14, 28

**YURIY PAK:**          9, 15, 16, 17, 29

**JONATHAN MORGAN:**          10, 18, 30

**JACK WEIZMAN:**          10, 18, 30